# 𝔖taunton

## T. Frank Flippo, Et Al., Partners T/A, Etc. v. Mildred C. Broome, Et Al.

September 8, 1961.

Record No. 5268.

Present, All the Justices.

The opinion states the case.

*George E. Haw* and *George E. Haw, Jr.* (*Haw & Haw*, on brief), for the appellants.

*W. Jerry Roberts* (*David Meade White; White, White & Roberts*, on brief), for appellee, Mildred C. Broome.

*Andrew J. Ellis, Jr.* and *Leslie D. Campbell, Jr.* (*Campbell & Ellis*, on brief), for appellee, J. E. Jones.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was instituted on December 11, 1959, by T. Frank Flippo & Sons, a partnership composed of T. Frank Flippo, H. Carter Flippo, and Arthur P. Flippo, hereinafter referred to as appellants, against Mildred C. Broome, praying for the specific performance of an alleged oral contract for the purchase of timber by appellants from Mrs. Broome.

On January 25, 1960, J. E. Jones filed his petition as an intervenor seeking to have Mrs. Broome specifically perform an alleged subsequent contract of sale of the above timber to him, and he was made a party defendant to the cause.

Mrs. Broome filed separate answers denying that she had made an enforceable contract either with appellants or with Jones.

The case came on to be heard *ore tenus*. During the hearing, after the introduction of some written correspondence relative to the sale of the timber, the case proceeded on the theory of appellants that there was a verbal contract of such sale to them which was confirmed in writing.

On April 29, 1960, the trial court entered a decree in which specific performance was denied appellants, and granted to J. E. Jones, the intervenor.

On petition of T. Frank Flippo & Sons, we granted this appeal. No petition for an appeal was filed by Mrs. Broome and no cross-error was assigned by her. However, in her brief she argues that "No enforceable contract" was made by her with the appellants or with Jones.

In a written memorandum of opinion, the chancellor of the lower court found it necessary to consider only the sufficiency of the evidence, since "the case turns upon proof of the facts relating to the

existence of a contract as presented by conflicting testimony." We agree with the chancellor.

■ Under the established rule in Virginia, a finding of the chancellor on conflicting evidence, heard *ore tenus*, will not be disturbed on appeal, unless it is against the clear preponderance of the evidence or without evidence to support it. Code of Virginia, 1950, § 8-491; *Williamson* v. *Johnson*, 164 Va. 632, 637, 180 S. E. 310; *Smith* v. *Pippin*, 188 Va. 869, 876, 51 S. E. 2d 159; *Smith* v. *Board of Supervisors*, 201 Va. 87, 91, 109 S. E. 2d 501; *Rogers* v. *Runyon*, 201 Va. 814, 816, 113 S. E. 2d 679; *Crowder, et al.* v. *Commonwealth of Virginia, etc.*, this day decided, 202 Va. 871, 121 S. E. 2d 487; 1 Michie Jur., Appeal and Error, § 277, page 707.

■ The conflicts in the evidence having been resolved by the chancellor against the appellants, the evidence will be stated in the light most favorable to the prevailing parties.

T. Frank Flippo & Sons are engaged in the lumber business in Hanover county, Virginia. Mildred C. Broome resides in London, England. She formerly lived in Hanover county, where her late father owned some real estate and an excelsior mill. At his death, the mill was sold to a corporation organized by T. Frank Flippo & Sons. The lands of her father were partitioned among his heirs, and Mrs. Broome was allotted four tracts of land, the timber on which is involved in this suit. In the settlement of her father's estate, and the sale of his mill to the Flippo corporation, Mrs. Broome developed some personal antagonism toward the Flippos, because she thought she had not been fairly treated.

Mrs. Broome had an account in the State-Planters Bank of Commerce & Trusts in Richmond, Virginia, hereinafter referred to as the Bank. She requested the Bank to assist her in effecting a sale of her timber in Hanover county. On August 6, 1959, the Bank wrote her that it was not licensed or qualified to sell real estate; and suggested that it be authorized to employ Frank T. Harris, a real estate broker, to appraise the timber and "handle the sale."

On September 1, Mrs. Broome replied, thanked the Bank, and advised it to proceed with the sale. On September 3, the Bank wrote her that it had referred the appraisal and investigation of the timber to Harris, and that Harris would report to her by October 1. Harris thereafter appraised the timber, and notified the Bank that he thought it was worth $18,000.00. During the course of his inspection and appraisal of the property, Harris enlisted the help of Edward L. Campbell, a brother of Mrs. Broome, to locate the lines of her prop-

erty, and Campbell told Harris that Arthur Flippo might be interested in its purchase. Campbell introduced Harris to Arthur Flippo, and Harris told the latter of his appraisal of the property, and that while he had no authority to sell it, he would be glad to have Flippo make him an offer; although "probably she (Mrs. Broome) would not want to sell it to them." Arthur Flippo said that he would make an offer by October 20.

On October 19, Arthur Flippo telephoned Harris that appellants "would be interested" in the purchase of the timber at the appraised price. During that telephone conversation Harris said he again advised Flippo that he "was only authorized to get an offer and had no authority whatsoever in awarding it to anybody." On the next day, Harris reported to W. J. Spiller, an assistant vice-president of the Bank, that the Flippos were "interested" in the timber at the price of $18,000.00. The Bank then wrote to Mrs. Broome, advising her that Harris had appraised the timber at $18,000.00; that Harris was certain that a purchaser could be obtained at that price; and informed her as to the charges for the services of Harris, in the event she "permitted" him to sell or decided not to sell.

Mrs. Broome wrote the Bank on October 24, advising it that she would like for Harris to sell the timber, if possible, at the appraised price. No terms or conditions of sale were mentioned, except as to the time of payment, and that the timber sold be merchantable. She asked for advice as to the growing timber, and about the prospect of selling any of her land at a good price. A day or two later, Spiller got in touch with Harris, and instructed him to get an offer for the purchase of the timber. Shortly thereafter, Harris went to see Arthur and Carter Flippo at the latter's office. Arthur Flippo told him that appellants would purchase the timber for $18,000, and desired that the deed be drawn in the name of the three partners as grantees. Harris again mentioned the probability that Mrs. Broome would not sell to the Flippos, and suggested that they get some other person to buy the timber in his name for them. The Flippos declined to do this, and insisted that the deed be made in their names as grantees.

Harris positively declared that at this conference with the Flippos, he again told them: "I couldn't accept anybody's offer;" but would do his best to get the timber for them; that he did not say or indicate in any manner that their offer was or would be accepted, but merely agreed to submit their offer for acceptance by the owner.

Following the above meeting, Harris informed the Bank of the Flippos' offer and, acting upon that information, the Bank had a deed

prepared on the terms of the offer and on November 10, 1959, forwarded it to Mrs. Broome with a letter of explanation. She was asked to execute and return the deed at her earliest convenience, "so that the purchaser could know that his offer had been accepted."

Upon receipt of the above letter and deed, Mrs. Broome replied on November 13, 1959, as follows: "Is there not someone else in Virginia to whom Mr. Harris could sell my timber than to Mr. T. Frank Flippo?" In addition, she said that she would not sign the deed to appellants because she thought she had been unfairly treated in the settlement of her father's estate when they purchased her father's excelsior mill. The Bank did not promptly report to the Flippos the refusal of Mrs. Broome to sign the deed, and on November 20, Arthur Flippo telephoned Spiller at the Bank, inquiring when the deed would be delivered. Spiller replied that his offer to purchase had not been accepted by Mrs. Broome; that no contract of sale had ever been made; and that Mrs. Broome refused to sign the deed.

On November 20, 1959, Mrs. Broome wrote to J. E. Jones, the intervenor, now a co-appellee, informing Jones that if he was interested he could arrange to buy the timber for $18,001.00 through Spiller. Jones cruised the timber, called on Spiller, told him that he would accept the offer of Mrs. Broome and pay her the above price. Spiller thereafter had a timber deed prepared for Mrs. Broome conveying the timber to Jones, and mailed it to Mrs. Broome in England. Mrs. Broome and her husband executed the deed and returned it to Spiller. Spiller received the deed on December 4, 1959, and immediately telephoned Jones that the deed would be delivered to him on that day. On the same day, before delivery, Arthur Flippo and his father, T. Frank Flippo, went to see Spiller to inquire what was causing the delay in completing a sale to them. Spiller told them that he had received a deed from Mrs. Broome conveying the timber to Jones. The Flippos threatened suit if delivery was made to Jones, and Spiller said that although he fully intended to deliver the deed to the latter, he retained it and did not deliver it, because of the threat of suit by appellants.

Mrs. Broome testified that after the execution of the deed to Jones by herself and husband, she mailed it to Spiller with the full intention that Spiller forthwith deliver it to Jones.

The testimony of Arthur and Carter Flippo is in conflict with that of Harris and Spiller. Both Arthur and Carter said Harris told them on November 2, 1959, "that Mrs. Broome had agreed to sell the timber for $18,000.00, and authorized the Bank to sell it." Arthur,

however, said that when Harris was introduced to him by Edward L. Campbell, Harris told him that "both his appraisal and the offer from a prospective buyer would be turned over to the Bank, who in turn would forward same to Mrs. Broome with their recommendations." Each brother admitted that Harris had mentioned the fact that Mrs. Broome might not be willing to sell to the Flippos, because of "animosity" against them. They said that this was the first time they had heard of her dislike of them.

Appellants contend that the chancellor erred in not finding that the Bank was appointed by Mrs. Broome as her special agent to sell her timber, and as such agent made a contract through Harris for its sale to them. They rely upon portions of the testimony of the several witnesses and the written correspondence between Mrs. Broome and the Bank.

The crucial point as to appellants' claim for specific performance is not whether the Bank or Harris had authority to sell the timber; but whether the offer of the appellants to purchase it was accepted. The evidence on behalf of Mrs. Broome amply supports the finding of the chancellor that there was no such acceptance or consummation of sale to the appellants.

Spiller testified that the Bank had no authority to make a contract for Mrs. Broome and that Harris was only a broker authorized to find a purchaser and report any offer to Mrs. Broome, who reserved the power to complete the sale. Harris testified equally as positively that he had no authority to make a sale, and that he so told the Flippos. Certainly it is clear that Mrs. Broome, at no time, accepted the offer of the appellants. Moreover, appellants were put on notice from the beginning that Mrs. Broome might refuse to sell to them. There never was any meeting of the minds of appellants with Mrs. Broome or her representatives, that amounted to the consummation of a sale. The chancellor accepted the evidence favorable to Mrs. Broome, and with respect to appellants' contentions, under settled principles, his findings must be sustained.

This brings us to the question whether Jones was entitled to have specific performance of his contract. There is no conflict in the evidence upon that question. Jones, upon receipt of Mrs. Broome's letter of November 20, 1959, offering to sell the timber to him, cruised the timber, went to the Bank according to her direction, conferred with Spiller, and accepted Mrs. Broome's offer. Spiller thereupon had a timber deed prepared conveying the timber to Jones, gave a copy of the deed to Jones, and forwarded the original by mail to

Mrs. Broome. In reply, he received on December 4, 1959, the deed executed by Mrs. Broome and her husband to Jones. On the same day, Spiller called Jones on the telephone and told the latter that the deed would be delivered to him that day. Delivery failed only because of the threat of a suit by appellants, if a deed for the timber was delivered to anyone but themselves.

Thus, we have an offer by Mrs. Broome, an acceptance by Jones, the execution of the deed by Mrs. Broome, and the delivery of the deed through the mail to Spiller, with the full intention of Mrs. Broome that Spiller deliver it to Jones upon the payment of $18,001.00, which sum Jones, at all times, stood ready, willing and able to pay. Mrs. Broome and Jones were fully agreed in all respects. Mrs. Broome intended her contract of sale to be binding on her when she mailed her executed deed to Spiller for delivery to Jones. It was her will that the deed pass into the possession of Jones, and it was the duty of Spiller to comply with her directions.

In *Leftwich* v. *Early*, 115 Va. 323, 328, 79 S. E. 384, we quoted with approval the following statement:

" 'The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention on the part of the grantor to make the instrument his deed. The main thing which the law looks at is, whether the grantor indicates his will that the instrument should pass into the possession of the grantee; and, if that will is manifest, then the conveyance inures as a valid grant, although, as above stated, the deed never comes into the hands of the grantee.' "

Cf. *Payne* v. *Payne*, 128 Va. 33, 104 S. E. 712; *Snidow* v. *First National Bank*, 178 Va. 239, 16 S. E. 2d 385.

In consideration of the foregoing facts, the chancellor did not err in holding and decreeing that J. E. Jones was entitled to the specific performance of his contract with Mrs. Broome.

For the reasons stated, the decree appealed from is affirmed in all respects.

*Affirmed.*