# Staunton

## J. T. CROWDER, ET AL. v. COMMONWEALTH OF VIRGINIA, DEPARTMENT OF WELFARE AND INSTITUTIONS.

September 8, 1961.

Record No. 5271.

Present, All the Justices.

The opinion states the case.

*W. M. Minter* and *Philip Kohen* (*Minter & Breckinridge*, on brief), for the appellants.

*Paul D. Stotts, Special Counsel* (*Frederick T. Gray, Attorney General; M. Ray Johnston, Assistant Attorney General*, on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

The Crowders were awarded an appeal from a final decree entered in the circuit court wherein the Commonwealth of Virginia was granted the specific performance of a contract for the sale of land.

The case was heard *ore tenus* by the chancellor. The record discloses that on February 20, 1959, D. P. Edwards, Superintendent of the State Convict Road Force, on behalf of the Commonwealth, secured from the Crowders an option to purchase 100 acres of land in Botetourt County. The contract provided that the Commonwealth had the exclusive option to purchase the land at any time within 120 days for the sum of $12,000, payable "by check when deed is recorded." Later, by a written agreement dated May 27, 1959, the expiration date of the option was extended until December 15, 1959.

The option was accepted by the Commonwealth on November 30, 1959, when Edwards notified the Crowders by registered letter as follows:

"The option to purchase your property * * * has been approved for purchase. It is our desire to take up this option and complete the transaction prior to the expiration date of the option December 15, 1959. We are this date instructing the Attorney General to make the necessary arrangements to complete this transaction."

In addition to the Edwards letter, E. C. Westerman, Jr., a local attorney representing the Commonwealth, wrote the Crowders under date December 2, 1959, as follows:

"Please be advised that the State wishes to exercise its option and purchase the acreage of land you own in Botetourt County, as described in the renewal option agreement of May 27, 1959. As soon as the necessary papers are prepared, I will be in touch with you to close this matter."

Later in December, 1959, after receiving these letters from the representatives of the Commonwealth, J. T. Crowder went to the law office of Westerman and asked permission to continue the use of the optioned land for the purpose of dumping trash. This request was referred to Edwards who granted the permission for a period of ninety days.

On February 4, 1960, Crowder again went to Westerman's law office where Westerman tendered him a check for the $12,000 consideration and requested Crowder to execute the deed which had been prepared for the Crowders' signatures. Crowder refused to accept the check and execute the deed. As a result, this suit was instituted.

In the assignments of error filed by the Crowders several questions are presented. The first is: Did the Commonwealth accept the option in the manner and within the time specified?

In this regard, the Crowders contend that the Commonwealth had to do two things in order to comply with the option, i.e., (1) the Crowders had to be notified on or before December 15, 1959, that the option would be exercised; and (2) a tender of the deed and the purchase price had to be made on or before December 15, 1959. They urge that neither condition was met, and therefore specific performance should be denied.

It is clear that the Commonwealth accepted the option prior to its expiration date, December 15, 1959, as Edwards notified the Crowders on November 30, 1959, that "An option to purchase your property * * * has been approved for purchase. It is our desire to take up this option and complete the transaction prior to the expiration date of the option December 15, 1959. We are instructing the Attorney General to make the necessary arrangements to complete this transaction."

The Crowders say that the use of the word "desire" in the letter does not constitute a present acceptance of the option but merely an "intent to accept" at a future date. There is no merit in this contention.

*Detwiler* v. *Capone*, 357 Pa. 495, 55 A. 2d 380, 384; *Sessions* v. *Skelton*, 163 Ohio St. 409, 127 N. E. 2d 378, 384.

The Edwards letter of November 30, 1959, was intended as a notice of present acceptance and was so recognized by Crowder. When he was questioned regarding the Edwards letter he testified:

"Q. Mr. Crowder, you got a letter from Mr. Edwards, I believe, around December 2nd, or something, that the State was going to exercise the option, did you not?

"A. Yes, sir; they was going to take it up and settle with me, and I was out."

In addition to this, Westerman, the local attorney representing the Commonwealth, testified to transactions which took place after the Edwards letter of acceptance, as follows:

"Q. Had there been further arrangements between the State and Mr. Crowder about his using the land that was being sold to the State?

"A. Some time around December of 1959, I believe it was—December 10th, probably—Mr. Crowder came to my office and wanted to know about continuing the use of the property over there for trash—dumping his trash. I told him I had no authority one way or the other about it, and I would write to Mr. Edwards and find out for him—which I did, I believe, on that day. I received a copy of the letter from Mr. Edwards just a few days after that, to Mr. Crowder, whereby Mr. Crowder was given 90 days' permission to dump over there * * *."

In addition to all of this, as heretofore noted, Westerman, the local attorney representing the Commonwealth, wrote Crowder on December 2, 1959, that the Commonwealth had accepted the option.

We hold that the Commonwealth made a *bona fide*, unqualified acceptance of the option within the time prescribed; and after the option had thus been accepted by the Commonwealth it became a contract of sale enforceable by either party.

■ The contention that the entire transaction had to be completed, *i.e.*, the deed signed and the money paid, before the option became binding, is untenable. The contract provided that the sum of $12,000 would be payable by check "when deed is recorded."

The Commonwealth had a reasonable time after the acceptance of the option within which to complete the transaction. It is disclosed by Crowder's own evidence that several matters had to be cleared up before the transaction could be concluded. It appears that there was

some discrepancy in the plat or survey of the land involved which Crowder wanted corrected. Furthermore, Crowder had been given permission to continue to use the land for a period of ninety days from December 10, 1959.

The option, by its terms, required notice of acceptance on or before December 15, 1959, but tender of payment was postponed until the "deed is recorded". Therefore, the tender of payment was not necessary to the exercise of the option. 55 Am. Jur., Vendor and Purchaser, § 41, p. 511; *First-Citizens Bank* v. *Frazelle*, 226 N. C. 724, 40 S. E. 2d 367; *Parker* v. *Murphy*, 152 Va. 173, 146 S. E. 254. See also Anno. 101 A.L.R. 1432, *et seq.*

As aforesaid, the Commonwealth had a reasonable time after the acceptance of the option within which to furnish the deed and tender payment, which it did on February 4, 1960, and under the related circumstances this was not an unreasonable delay.

It is next contended that Edwards lacked the necessary legal authority to enter into a contract on behalf of the Commonwealth.

The record is replete with evidence showing that Edwards was employed by the Commonwealth as Superintendent of the State Convict Road Force under the Division of Corrections, Department of Welfare and Institutions, and as such agent had authority to bind the Commonwealth for which he was acting. His actions were approved by the Attorney General of Virginia and the local attorney representing the Commonwealth, and it is disclosed that at Edwards' request a check (Plaintiff's Exhibit No. 4) for $12,000, dated December 4, 1959, had been issued by the Treasurer of Virginia, payable to the Crowders, covering the consideration mentioned in the option.

Furthermore, we have frequently held that although a contract may be unilateral, when suit is brought for its enforcement, he who has not theretofore been bound will be deemed to have consented to it in writing, thus making the obligations mutual. *Boston* v. *Shackelford*, 162 Va. 733, 751, 175 S. E. 625; *Mooers* v. *Wilson*, 183 Va. 910, 919, 33 S. E. 2d 791, 794.

The Crowders next say that the court's decree for specific performance was contrary to the law and the evidence. With this we do not agree. In addition to the plain terms of the contract, the letter exhibits showing the acceptance of the option, and the evidence which was heard *ore tenus* clearly sustain the decision.

There is little if any conflicting evidence in the record, but under our rule, even though the evidence be conflicting, where it is heard *ore*

*tenus* by the chancellor, it carries the weight of a jury's verdict and will not be disturbed unless it is plainly wrong or without evidence to support it. *Williamson* v. *Johnson*, 164 Va. 632, 637, 180 S. E. 310; *Fairfax County* v. *Town of Fairfax*, 201 Va. 362, 366, 111 S. E. 2d 428, 432.

Finally, the Crowders say that the court erred in refusing to consider prior options between the parties which had not been exercised by the Commonwealth.

This relates to prior options between the Commonwealth and the Crowders for the purchase of the land in question which, for one reason or another, the State did not see fit to exercise. These prior options had no relation to the contract here under consideration, and they were properly excluded as being irrelevant and immaterial to the issue before the court. *Boggs* v. *Commonwealth*, 199 Va. 478, 486, 100 S. E. 2d 766, 772; 7 Mich. Jur., Evidence, § 38, p. 376; 20 Am. Jur., Evidence, § 248, p. 242.

There is no reversible error in the decree complained of and it is

*Affirmed.*