Frank W. WICKER, Appellee,

v.

NATIONAL SURETY CORPORATION, Appellant.

No. 9024.

United States Court of Appeals Fourth Circuit.

Argued Oct. 1, 1963.

Decided April 20, 1964.

Aubrey R. Bowles, Jr., Richmond, Va. (H. Armistead Boyd, and Bowles, Boyd & Herod, Richmond, Va., on brief) for appellant.

Thomas A. Williams, Jr., Richmond, Va. (Ernest W. Williams, and Williams,

Williams, Williams & Williams, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and R. DORSEY WATKINS, District Judge.

HAYNSWORTH, Circuit Judge.

The question is whether a purchaser of an automobile from a Virginia dealer was its owner or its permissive user, within the meaning of the dealer's liability insurance, when the old, assigned title certificate, never physically tendered to the purchaser, was in the possession of the dealer, with the approval of the purchaser, for the purpose of filing it with the Division of Motor Vehicles. The District Court held the dealer was still the owner of the vehicle and its insurer responsible for the damages caused by the automobile in the hands of the purchaser. Under the circumstances presently appearing, we think the dealer was no longer the owner.

There is no substantial dispute as to the facts. The issue is one of law.

Commonwealth Ford, an automobile dealer in Richmond, acquired a used station wagon. It received the duly assigned title certificate of the former owner, which it retained as it was authorized to do under the provisions of § 46.1–90 of the Code of Virginia, 1950, without filing it with the Division of Motor Vehicles.

On December 20, 1961, Joseph F. White decided to purchase the station wagon from Commonwealth Ford. He traded in a used panel truck, paid $50 in cash, agreed to pay an additional $50 in cash the next day, and he executed a conditional sales contract securing the balance of the purchase price. He accepted delivery of the station wagon.

On December 20, White signed a buyer's order and a credit application, an application for title to the station wagon, a conditional sales contract and an application for a temporary registration certificate. The conditional sales contract and the application for title were signed in blank, but the application for temporary registration was completely filled out when executed by White. It contained a representation that White was the owner of the automobile. It was agreed between White and representatives of Commonwealth Ford that employees of the dealer would complete the papers and deliver to the Division of Motor Vehicles those papers which were required to be filed with it. White left with Commonwealth Ford $1 with which to pay the temporary registration fee, and it was agreed that he would return at a later date to pick up the registration card.

At the time the transaction was closed, White, of course, delivered to Commonwealth Ford the panel truck he was trading in on the station wagon, together with its title certificate duly assigned to Commonwealth Ford. At that time, sometime after 7:30 o'clock in the evening, the title certificate to the station wagon had not been reassigned by Commonwealth Ford and was not delivered to White. It was understood that the title certificate to the station wagon would be reassigned the next day when the other papers were completed and would be delivered by Commonwealth Ford, with other essential papers, to the Division of Motor Vehicles.

When the transaction on the evening of December 20 was thus concluded, White was told that the station wagon was his and he accepted delivery of it.

On December 21, the next day, employees of Commonwealth Ford completed those papers which had been executed in blank by White, and the reassignment to White of the old certificate of title to the station wagon was duly executed. On that same day the conditional sales contract was delivered to Motor Credit Corporation, which immediately paid Commonwealth Ford for it. All of the other papers were submitted, or held for submission, to one of Commonwealth Ford's supervisory officials for final inspection and approval. When that occurred is not shown, but the District Court found that, in the normal

course of business, it would have occurred on the morning of December 22.

The Division of Motor Vehicles closed for the Christmas holidays at noon on December 22, 1961, and did not open again until December 27. On December 27, Commonwealth Ford delivered by messenger to the Division of Motor Vehicles all of the necessary papers in the White transaction. The Division thereupon issued a new title certificate in White's name, showing the lien of Motor Credit Corporation, and issued a new temporary registration certificate.

Meanwhile, on December 24, 1961, the station wagon operated by White struck and injured the plaintiff, Wicker. Wicker's theory is that because the reassigned certificate had not been delivered to White on the 20th, Commonwealth Ford remained the owner of the station wagon, at least until December 27 when the reassigned title certificate was delivered to the Division of Motor Vehicles and the new title certificate was issued in White's name. As owner of the station wagon, Wicker reasons, Commonwealth Ford had the right to repossess it and deny White its use, so that White's possession and operation of the vehicle were permissive and not by virtue of his own right.[1]

We disagree.

Under § 46.1–90 of the Virginia Code of 1950, an automobile dealer who acquires for resale an automobile from another is not required to forward the title certificate to the Division of Motor Vehicles. When the vehicle is resold by the dealer to another person, however, the dealer "shall give notice of the transfer to the Division and shall endorse and acknowledge an assignment and warranty of title upon the certificate and deliver it to the person to whom the transfer is made." By § 46.1–89 the transferee is required to forward the assigned certificate to the Division, with applications for registration of the automobile in the name of the transferee and for a certificate of title.

It has been held by Virginia's Supreme Court of Appeals that the requirements of § 46.1–90 are mandatory, and that, in some circumstances, failure to execute an assignment of the title documents prevents passage of the legal title.

The question first came up in a very different context. In Thomas v. Mullins, 153 Va. 383, 149 S.E. 494, it appeared that the plaintiff had selected an automobile from the defendant's stock. Before any instruments of transfer had been executed, however, the automobile was destroyed by fire while in the dealer's garage and in his custody. The Court held that it was an executory not an executed sale, and that the risk of loss by fire remained upon the dealer. It relied in large measure upon the provisions of § 46.1–90 and the fact that there had been no assignment of the title.

In the context of liability coverage, an affirmative agreement to postpone compliance with § 46.1–90 has been held to require a conclusion that the agreement was executory. Thus in Nationwide Insurance Company v. Storm, 200 Va. 526, 106 S.E.2d 588, an individual, not a dealer, agreed to sell her car to another. The purchaser paid the purchase price and took possession of the vehicle, but the two agreed that they would go together on the following Monday to the Division of Motor Vehicles and there execute and file the necessary papers, including the assignment of the seller's title. On Sunday, the day before the title was to have been transferred, the purchaser of the

1. Even if there were some imperfection in White's legal title to the station wagon, it does not necessarily follow that his use of the vehicle was permissive and not as of right. If the clearly manifested intention of the parties to transfer to White the legal as well as the equitable title was for some reason ineffective, it certainly does not follow as of course that the unintended owner of the retained naked legal title also unintentionally retained the right of control of the vehicle. We need not explore that question, however, in light of our conclusion that on the 24th White was the owner of the technical legal title as well as of the equitable title to the station wagon.

vehicle was involved in a collision. The Court held that the seller's insurance afforded coverage, for the agreement of sale was executory until assignment of the title certificate.

Judge Barksdale, United States District Judge for the Western District of Virginia, has placed a similar interpretation upon Virginia's statute. In United States Fidelity and Guaranty Corporation v. Meyers Motors, D.C., 143 F. Supp. 96, it apeared that the dealer had delivered the automobile to the purchaser, but had not executed an assignment of the certificate when the purchaser was involved in a collision occasioning injuries. Judge Barksdale concluded that because of § 46.1–90 the sale had not been executed and the dealer's insurance afforded coverage. Judge Barksdale reached the same conclusion in a different context when the United States seized the automobile when the purchaser used it unlawfully in the liquor business. United States v. One Hudson Hornet Sedan, D.C., 110 F.Supp. 41. It was held that the dealer was entitled to remission because, not having executed the assignment of the title certificate at the time of seizure of the automobile, he was still its owner.

■ We accept, of course, Virginia's interpretation of its statute. In Virginia, if the assignment of the title certificate has not been executed at the time of the accident, the seller has at least a legal title and the entire transaction may be held to be executory.[2] At the same time, it is clear that if the seller delivers the title certificate to the purchaser, the assignment on the back of the certificate having been properly executed, the seller has divested himself of all interest in the vehicle whether or not the purchaser thereafter complies with his statutory duty of filing the assigned certificate with the Division of Motor Vehicles. Nationwide Mutual Insurance Company v. Cole, 203 Va. 337, 124 S.E.2d 203. Under the Virginia decisions execution of the assignment and delivery of the certificate are, or may be, critical and conclusive of the question of passage of title, but filing of the documents with the Division of Motor Vehicles is not.

Here, unlike the situations in the Mullins, Storm and Myers Motors' cases, at the time the injury was inflicted the assignment of the title had been properly and completely executed and the papers were being held only for the purpose of filing them in the Division of Motor Vehicles, then closed for the Holidays. Nothing else remained for the seller or purchaser to do.[3]

The District Court was concerned about theories of constructive delivery. It thought there could have been no constructive delivery of the title certificate on the evening of December 20 because the assignment on the back of it was not executed on behalf of Commonwealth Ford until the next day. After the 21st, it could find no definitive act which might be construed as a constructive delivery until the documents were actually filed with the Division on the 27th. This approach, however, overlooks the fact that White had clearly authorized Commonwealth Ford for him, and on his behalf, to file with the Division the assigned title certificate, his application for a new

---

2. This is not necessarily the result in other jurisdictions under other statutes. See, for instance, Lynch v. United States Branch, Gen. Acc. Fire & Life Assurance Corp., 4 Cir., 327 F.2d 328, in which we were called upon to construe a somewhat similar South Carolina statute.

3. There was testimony that it is common practice in Virginia for automobile dealers to transmit to the Division the assigned title certificates of cars they sell. The statute places the duty of transmission upon the purchaser, but dealers regularly perform that obligation for their customers. It was the practice of Commonwealth Ford, and apparently of other dealers in Richmond, to transmit to the Division of Motor Vehicles all papers required to be filed with it by messenger rather than by mail. It is not suggested that retention of the papers during the days that the offices of the Division were closed was referable to any other circumstance than the regular custom of transmitting such papers by hand.

title certificate and his application for temporary registration tags. Necessarily, his authorization that Commonwealth Ford do those things for him as his agent included authorization to Commonwealth Ford to receive and hold for him the assigned title certificate until it could be filed with the Division. An agency relationship plainly existed. Commonwealth Ford was not only to file the certificate of title but White's other applications with which the dealer had no concern except the service of the convenience of its customer, and it had received from White the necessary transfer fees with which to accomplish his purposes.

It is suggested that the dealer may have wished to retain the title certificate in its possession because of its interest in protecting its lien, or that of its assignee, under the conditional sales contract. The fact that the reassignment contained a notation of the lien, as required by the statute, may appear to have been a sufficient protection of that interest, but, even if the dealer thought that assurance of proper filing of the certificate in the offices of the Division of Motor Vehicles would be of some additional protection for the lien, it does not destroy the obvious fact that, in collecting and holding these papers for filing, the dealer was acting as agent of its customer.

When the title certificate was properly reassigned on December 21, and all of the papers were complete and had been finally inspected and approved on the 22nd, the dealer was under an absolute duty which it owed to White to file them with the Division. Rightfully, it could not have retained them longer than was necessary to procure their filing. White had not paid the remaining $50 he had agreed to pay in cash, but that was clearly an open account indebtedness which had nothing to do with completion of the sale or with the filing of the several papers. When, therefore, White's agent held all of the papers, fully executed and

ready for filing, for the sole purpose of filing them, it held them as White's agent and would not have been permitted to take an inconsistent or disloyal position. The delay beyond December 22 of the actual filing of the papers was occasioned by the closing of the offices of the Division of Motor Vehicles and not by any neglect of the agent-dealer.

In Virginia even an actual delivery may be found if an intention to deliver is sufficiently manifested. In Payne v. Payne, 128 Va. 33, 104 S.E. 712, for instance, the testator executed a will in which he expressed an intention to convey certain land to his son and stated that the deed would be found with the will. Thereafter he executed a deed which was found with the will. The Court held there was a sufficient delivery of the deed, though it appears never to have left the possession of the grantor until his death. Here, the intention to deliver the certificate is certainly as clearly and unequivocally manifested as was the intention to deliver in Payne. The result here, however, is much more compelling than it was in Payne, for here when the papers were all completed, collected with similar papers arising out of other transactions and held solely for the purpose of filing them all with the Division of Motor Vehicles, the possession was that of the agent of the purchaser. Since White's agent possessed the properly reassigned certificate in that capacity, it was delivered to White and possessed by him.

There was no doubt among the parties as to the owner of this automobile when it was being operated by White on December 24. What doubts might be derived from Virginia's statute were resolved in accordance with the intention and understanding of the parties when the seller held the properly assigned title certificate for the sole purpose of filing it, and had an unequivocal duty, as the buyer's agent, to do that.

Since the sale of the vehicle was executed, not executory, White's use of the

automobile was not permissive and the omnibus clause of the dealer's liability insurance did not extend the coverage of that insurance to White.

Reversed.