## CIRCUIT COURT OF HENRICO COUNTY

Hall

  v.

Schrum

June 7, 1979

Case No. 78C311

By JUDGE E. BALLARD BAKER

  The Halls ask for specific performance of a contract of May 24, 1978, under which they and the Schrums agreed that the Halls would buy the Schrum's home for $29,500.00. "All cash to sellers at settlement. This contract subject to buyers selling their home at 2701 Carlisle Avenue." The contract further provided that settlement was to be "at office of Realtor or at attorney's office on or before as stated above . . . ."

  Mr. Schrum was confined in Southampton Correctional Center at the time and signed the contract when Mrs. Schrum presented it to him. The Schrums were in the process of obtaining a divorce.

  The following events took place:

  (1) By check dated July 6, 1978, Mrs. Hall gave Bonnie Bolton (the former Bonnie Schrum who had remarried) $250.00. Mrs. Schrum requested this in order to meet a mortgage payment on the house, as the Halls had not sold their home.

  (2) By check dated August 15, 1978, Mrs. Hall gave Bonnie Bolton (the former Bonnie Schrum who had remarried)

$250.00. This was at her request to meet another mortgage payment.

(3) Sometime between May 24, 1978, and August 15, 1978, Mrs. Schrum moved out of the home and remarried.

(4) After May 24, 1978, the Halls attempted to sell their house. Sometime around early September, 1978, it appears that a proposed contract on the Halls' home would not go through, the buyer being unable to get a loan.

(5) Later in September, 1978, after the Halls had been advised that Lewis Schrum wanted the money for the house, Mary Brown, a realtor interested in selling the Hall home but with no commission riding on the sale of the Schrum home, agreed to buy the Hall home. She applied for a loan. Mary Brown was unable to testify as to the date of this application but did testify that the money could have been available by October 15 or October 30, 1978.

(6) Lewis Schrum was released on bond in September, 1978, returning to the area in the second or third week. He did not then move into the home. He was upset that the sale had not been closed and that the house was vacant and had been vandalized. After he conveyed his discontent to Bonnie Bolton and she had talked to Mrs. Hall, Lewis Schrum called Mrs. Hall, This was around October 1, 1978. Mrs. Hall said they could get the money in two weeks. Schrum said he would not wait and that he did not want to sell. He stated he would return the $500.00.

(7) Upon receiving this information, Mary Brown took no further steps relating to her loan, as she saw no point in proceeding further in view of his position. She did testify that the loan was still open.

The fact that Lewis Schrum signed the May 24 contract while confined is no defense. *Dunn v. Terry*, 216 Va. 234 at 239 (1975), cites a number of cases that a convict may execute contracts and deeds.

The case turns on whether the Halls have met the conditions of the contract. Their obligation is to pay $29,500.00 cash at settlement, but the date of settlement is not established. There is a provision that the contract is subject to the Halls selling their home, and it is reasonable to infer that the parties expected the Halls' cash to come from the sale of their home.

Time was not made of the essence of the contract, and therefore, the Halls have a reasonable time to complete the purchase, considering all the circumstances. 71 Am. Jur. 2d, *Specific Performance*, sect. 63; 17 M.J., *Specific Performance*, sect. 29, 30.

The Halls were unable to perform prior to the conversation between Mr. Schrum and Mrs. Hall around October 1, 1978, but their delay had been acquiesced in by the Schrums, and $250.00 payments had been made in July and August.

By his telephone conversation with Mrs. Hall around October 1, 1978, Mr. Schrum sought to end the deal. The question is, can he do it?

In *Boston v. Shackleford*, 162 Va. 733, 755 (1934), the following statement appears:

> In contracts for the sale of land equity has established the rule that unless expressly made so by the terms of the contract or by special circumstances, time is not essential . . .
>
> Even, however, where not originally of the essence, when the time for performance has passed, he who seeks action may give notice as to the time within which it must be executed, if at all. If the time so fixed is reasonable, then the limits must be observed. What is important is this: There must be notice before time can be made of the essence where it was not a part of it originally.

The same thought is expressed in *Boatwright v. Peaks*, 190 Va. 786, 773 (1950), and in *Sims v. Nidiffer*, 203 Va. 749, 753 (1962).

Whether a reasonable time for the Halls to have performed had passed is not important, as time was not of the essence. If it had not passed, then Mr. Schrum's attempt to rescind could not be effective. If the time has passed, Mr. Schrum could not rescind without giving notice. He gave no notice.

It can be argued that the Halls never put themselves in a position of being ready, willing, and able to comply with the contract. They never tendered the cash. This, of course, is true, but after Schrum's attempted rescission

in his telephone conversation with Mrs. Hall, tender was unnecessary.

> It is clear that a tender of performance by the plaintiff, as a condition of an action for specific performance, is unnecessary if the defendant repudiates the contract before suit, or if it appears that he would have refused the tender if it had been made . . . (71 Am. Jur. 2d, *Specific Performance*, sect. 66.

See also the quote from the same authority found in the dissenting opinion in *Mundy v. Hesson*, 215 Va. 386, 395 (1974). Also, 17 M.J. *Specific Performance*, sect. 59.

Mr. Schrum's statement to Mrs. Hall that he would wait no longer and that he did not want to sell is, under the circumstances, a repudiation of the May 24, 1978, contract. The Halls, at that time, were in the process of obtaining the money through the actions of Mary Brown. The testimony is that the money would have been available in October. Following Mr. Schrum's message, the procedure for obtaining the money was discontinued, but the loan commitment is still available. In view of Mr. Schrum's position, it was unnecessary for the Halls to continue the then purposeless conduct of securing the money and making a formal tender.

Defendants have suggested that the contract was lacking in mutuality, as there was no obligation on the Halls to do anything. However, the Halls were obligated to buy the home, subject to the sale of their own place. They made an effort to do so. They paid $500.00 to Mrs. Schrum on the house, which money has never been returned or tendered. A loan for the specific purpose of getting the deal closed was sought and subsequently obtained by Mary Brown. In addition, by this suit for specific performance, the Halls have become bound. *Crowder v. Commonwealth*, 202 Va. 871, 875 (1961); 4B M.J., *Contracts*, sect. 28; 17 M.J. *Specific Performance*, sect. 23.

In my view, the Halls are entitled to specific performance of the contract of May 24, 1978.