**AMERICAN INTER-INSURANCE EXCHANGE, Plaintiff,**

v.

**HOME INDEMNITY COMPANY et al., Defendants.**

**Civ. A. No. 79–0055–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

May 14, 1980.

---

William W. Eskridge, Abingdon, Va., for plaintiff.

Z. D. Christian, Bluefield, Va., Leslie M. Mullins, Norton, Va., G. P. Young, Wytheville, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This diversity action[1] involves a suit for declaratory judgment as to the applicability of liability insurance coverage. The court is presently confronted with the parties' cross motions for summary judgment. Below are the pertinent facts:

### I. *FACTS*

An employee of Peter Kiewit Sons (Kiewit) of Omaha, Nebraska, engaged Marshall Peery, an operator of a car shop and repair service in Tazewell, Virginia, to repair and dispose of three trucks that Kiewit had stored in Bluefield, Virginia. Pursuant to this arrangement, Peery picked up a 1975 Ford pick-up, completed some minor repair work on it, and placed it on his lot for sale. Although the truck carried Virginia license plates and was titled in Virginia to Kiewit, the actual certificate of title was at Kiewit's place of business in Nebraska.

On Friday, October 28, 1977, Ramon Vilacha inquired as to the selling price of the truck. With Ramon Vilacha present, Peery conferred by telephone with Kiewit in Ne-

---

1. Jurisdiction attaches to this court under 28 U.S.C. § 1332. Neither party contested the court's jurisdiction.

braska and stated the selling price to be $1,100.00.[2] Ramon Vilacha agreed to this price and tendered a check drawn on the account of "Vilacha Motors, Terry Vilacha." Ramon Vilacha was Terry Vilacha's father and assisted his son in the used car dealership denoted as Vilacha Motors.

Although Ramon Vilacha took possession of the truck and drove it to the Vilacha Motors lot that day, he did not receive a certificate of title. The certificate of title, located in Nebraska, was assigned and mailed to Peery on the day of the purchase. However, Peery did not give the title to Ramon Vilacha until it arrived in the mail on Monday, October 31, 1977. On the evening of October 28, 1977, Ramon Vilacha informed Terry Vilacha of the purchase.

While returning from a Saturday night hunting trip on Sunday, October 30, 1977, the same truck, operated by defendant Terry Vilacha, was involved in a collision with an automobile operated by defendant Roy L. Collins and a near collision with an automobile operated by defendant E. L. Swanson Mullins. In addition to Terry Vilacha, the truck was occupied by Kimberly Dawn Webb and defendant Wanda Diane Shortt.

When the accident occurred, Terry Vilacha had a general automobile liability insurance policy issued by plaintiff American Inter-Insurance Exchange (A.I.E). Also, Kiewit had a public liability insurance policy issued by defendant Home Indemnity Company. When defendant Shortt sued defendants Vilacha and Mullins for personal injuries in state court,[3] the present conflict arose as to whether plaintiff or defendant insurance company would provide coverage and a defense for Terry Vilacha. Upon Home Indemnity's refusal to do so, A.I.E. undertook Vilacha's defense. Also, A.I.E. instituted this suit for a declaratory judgment on whether the Home Indemnity policy is applicable to the accident and whether both insurance companies should contribute equal shares to payment of the loss as provided in the "Other Insurance" clauses of both policies.

## II. DELIVERY OF TITLE

Home Indemnity contends that since legal ownership of the truck had passed to Terry Vilacha prior to the accident, its policy of insurance issued to Kiewit does not apply to the loss. A.I.E. counters this assertion by arguing that legal title had not passed to Terry Vilacha at the time of the accident and, therefore, Home Indemnity's policy remained in effect on the truck.

In Virginia, there are two conditions precedent to the valid transfer of title on a motor vehicle: "The owner of a motor vehicle . . . transferring . . . title . . . shall endorse an assignment and warranty of title upon the reverse side of the certificate of title of the motor vehicle . . ., and shall deliver the certificate to the purchaser . . . ." Va.Code Ann. § 46.1–87 (Repl.Vol. 1974). Since it is uncontested that Kiewit endorsed the certificate prior to the accident, the remaining issue is whether the delivery requirement was satisfied prior to the accident. In other words, does the statute require actual physical delivery to Vilacha; does mailing the certificate to Peery constitute actual physical delivery; and, does mailing the certificate to Peery constitute an intention to deliver that satisfies the statute?

Apparently, the only decision that is factually relevant to the case at bar is *Wicker v. National Surety Corporation*, 330 F.2d 1009 (4th Cir. 1964). In *Wicker*, a purchaser paid for and received possession of a motor vehicle. Subsequent to the assignment of title, but prior to the actual physical delivery of title, the vehicle was involved in an accident.[4] The same issue

---

**2.** Of this $1,100.00, Peery obtained a fee of $200.00.

**3.** Shortt asserted her claim for personal injuries in the Circuit Court of Tazewell County, Virginia, on May 2, 1978.

**4.** Cf. *Nationwide Insurance Company v. Storm*, 200 Va. 526, 106 S.E.2d 588 (1959). In *Storm*, a purchaser had possession of and made the final payment on a motor vehicle on a Saturday. However, the parties agreed that the title would not be assigned nor delivered until the following Monday. On the intervening Sunday,

arose as in the case at bar: Did the seller's or purchaser's insurance policy cover the loss?

The court found that the seller retained title to the vehicle for the sole purpose of filing it and other papers with the Division of Motor Vehicles. Cast in such a role, it was held that the seller was acting as an agent for the purchaser. Noting that "[i]n Virginia even an actual delivery may be found if an intention to deliver is sufficiently manifested," *Wicker*, 330 F.2d at 1013, the court opined that the title was delivered to, and possessed by, the purchaser through his agent.

■ Although the *ratio decidendi* of *Wicker* requires an actual physical delivery to a purchaser's agent, the court made clear that the test employed to find a delivery under Va.Code Ann. § 46.1–87 (Repl. Vol. 1974) is a sufficiently manifested intent to deliver. So, the agency relationship in *Wicker* only made the delivery more apparent. It is the manifestation of an intent to deliver, not the agency relationship, that is required for a successful delivery. Also,

the court authorized analogizing the delivery of title requirement to the delivery of deed requirement involving real property.[5]

■ Accepting the above interpretation of *Wicker*, a consideration of *Flippo v. Broome*, 202 Va. 919, 121 S.E.2d 490 (1961), is decisive in the case at bar. In *Flippo*, an owner of real estate sent an executed deed through the mail to her agent[6] with the intention that the agent would deliver the deed to the purchaser. This was held to be an effective delivery, regardless that the purchaser never received physical possession of the deed.

[The seller] intended her contract of sale to be binding on her when she mailed her executed deed to [the agent] for delivery to [the purchaser]. It was her will that the deed pass into the possession of [the purchaser], and it was the duty of [the agent] to comply with her directions.

*Flippo*, 121 S.E.2d at 494.

■ As in *Flippo*, there was an effective delivery in the case at bar. When Kiewit mailed the assigned title to its agent Peery, it manifested the intention that the docu-

the motor vehicle was involved in an accident. The court held that the seller's insurance covered the loss because legal ownership had not passed to the purchaser. *Storm* is not helpful in resolving the issue at bar. In *Storm*, the title had not been assigned prior to the accident and the court did not discuss the delivery requirement. Although *Wicker* deals with the dealer transfer provisions of Va.Code Ann. § 46.1–90 (Repl. Vol. 1974), the delivery requirement is identical to Va.Code Ann. § 46.1–87 (Repl. Vol. 1974), and appears to be the only decision to consider the Virginia delivery of title problem in depth.

5. The passage referred to in *Wicker* is stated below:

In Virginia even an actual delivery may be found if an intention to deliver is sufficiently manifested. In *Payne v. Payne*, 128 Va. 33, 104 S.E. 712, for instance, the testator executed a will in which he expressed an intention to convey certain land to his son and stated that the deed would be found with the will. Thereafter he executed a deed which was found with the will. The Court held there was a sufficient delivery of the deed, though it appears never to have left the possession of the grantor until his death. Here,

the intention to deliver the certificate is certainly as clearly and unequivocally manifested as was the intention to deliver in *Payne*. *The result here, however, is much more compelling than it was in Payne*, for here when the papers were all completed, collected with similar papers arising out of other transactions and held solely for the purpose of filing them all with the Division of Motor Vehicles, the possession was that of the agent of the purchaser. Since White's agent possessed the properly reassigned certificate in that capacity, it was delivered to White and possessed by him.

*Wicker*, 330 F.2d at 1013 (emphasis added).

6. Although the court in *Flippo* never specifically denoted the middleman as seller's agent, a reading of the decision makes this fact apparent. But, assuming that he was not seller's agent, this does not affect the present opinion. In *Payne v. Payne*, 128 Va. 33, 104 S.E. 712 (1920), a sufficiently manifested intent to deliver was found in a deed case even though the deed remained in the grantor's possession until his death. So, it is the intent to deliver, and not the physical location of the document, that is determinative to a successful delivery.

ment should pass into the possession of Vilacha. This manifestation of intent, without more, constitutes a deliver under Va. Code Ann. § 46.1–87 (Repl. Vol. 1974). It is incongruous to impose a higher standard for delivery of title to an automobile than for delivery of a deed to land, since the sanctity of the latter, historically, far exceeds the former.

Furthermore, this ruling comports with the intention and understanding of the parties. When Ramon Vilacha paid for and received possession of the vehicle, there was no doubt among the parties that the Vilachas owned the vehicle. It was never considered that Kiewit should be responsible for the possible negligence of the Vilachas. This court is of the opinion that any doubt as to the delivery requirement should be resolved in accordance with the parties' understanding. *See Wicker*, 330 F.2d at 1013. To hold otherwise would impose burdens not contemplated by either party.

### III. CONCLUSION

Since Terry Vilacha was the legal owner of the motor vehicle at the time of the accident, he was not a named insured under the liability insurance policy issued by Home Indemnity to Kiewit. It follows that defendant Home Indemnity's policy does not cover the loss and its motion for summary judgment is granted.