## Richmond

NATIONWIDE INSURANCE COMPANY v. JUNE E. STORM.

January 26, 1959.

Record No. 4879.

Present, Spratley, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*William B. Eley* (*Rixey & Rixey*, on brief), for the plaintiff in error.

*A. A. Bangel* (*Herbert K. Bangel; Bangel, Bangel & Bangel*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

June E. Storm obtained a judgment for $12,000 against Richard E. Goodwin for personal injuries sustained in an automobile accident. Later she filed suit against Nationwide Insurance Company seeking judgment for $5,000, together with interest on the sum of

$12,000 from November 1, 1955, the date of the judgment against Goodwin.

As a basis for her suit against the insurance company plaintiff alleged that she had obtained a judgment against Goodwin for injuries received while he was operating an automobile owned by Martha V. Olsen. She further alleged that there was in existence at the time a $5,000 liability insurance policy issued by the defendant company to Mrs. Olsen which also covered Goodwin as an insured due to the fact that at the time of the accident he was operating the car with the consent of the owner.

To this motion for judgment the insurance company filed a plea of *res judicata* and a motion for summary judgment based thereon. The plea alleged that in a prior action brought in the circuit court Richard E. Goodwin was the plaintiff and the insurance company the defendant.

The lower court in that prior action had construed the policy and held that Goodwin was not an insured under the policy at the time of the accident; and on July 13, 1956, the court entered an order sustaining the plea of *res judicata* and entered summary judgment. This judgment was reversed on appeal (199 Va. 130) and the case remanded for a new trial.

Upon retrial, the lower court, without a jury, heard the case and entered an order granting judgment in favor of the plaintiff in the amount sued for. We granted the insurance company an appeal.

The court having heard the case without a jury, the facts are to be stated in the light most favorable to the prevailing party. 1 Mich. Jur., Appeal and Error, § 276, pp. 705, 706; *Brumfield* v. *Brumfield*, 194 Va. 577, 580, 74 S. E. 2d 170, 172; Code, 1950, § 8-491.

The facts disclosed that the Chevrolet automobile involved in the litigation was purchased in the name of Martha Virginia Olsen, and the assigned risk liability insurance policy was issued in her name. Later, Richard E. Goodwin bargained to purchase the automobile, making two payments thereon and owing the final payment. From the date of the first payment he had operated the car with the consent of Mrs. Olsen and was so operating it at the time of the accident. The final payment was made on a Saturday and it was agreed that the title would not be transferred or assigned until the following Monday when the parties could go to the office of the Division of Motor Vehicles. The accident occurred on Sunday, the day following the

final payment, at which time title to the said automobile had not been transferred to Goodwin. Goodwin testified that he could not get liability insurance until the title was transferred to him.

Evidence was introduced by the insurance company in an attempt to show that Melvin C. Olsen (Martha V. Olsen's son), a minor, was the actual owner of the car. However, he, his mother, and the prospective purchaser, Goodwin, testified that before agreeing to sell the automobile it was necessary for Melvin Olsen to secure authority to do so from the title holder, Martha Virginia Olsen.

The controlling question is: who was the owner of the automobile at the time of the accident—Mrs. Olsen or Goodwin.

The insurance company contends that the formal requisites of Code, § 46-84(*) "need not be complied with in order to transfer *ownership* of the motor vehicle from one party to another."

While we have no case in Virginia on all fours with the instant case, we have held that in order to complete the sale upon his part it is essential that the seller conform to the statutory requirement by delivering to the purchaser a proper assignment of title. *Thomas* v. *Mullins,* 153 Va. 383, 391, 149 S. E. 494. See also *U. S.* v. *One Hudson Hornet Sedan,* 110 F. Supp. 41.

The case of *Garlick* v. *McFarland, et al.,* 159 Ohio St. 539, 113 N. E. 2d 92, involved the interpretation of a transfer statute similar to ours. (See Ohio General Code, § 6290-3). The facts in that case are practically identical with the facts here involved. There it appears that in April, 1947, McFarland discussed with Prosen the purchase of his automobile which was not then in running condition; an offer of $90 was made for it by McFarland provided he could put the car in condition. On Thursday, May 8, 1947, McFarland paid Prosen the sum of $90 and it was contemplated that the car could be made to operate by Saturday, May 10. On that date, through the combined efforts of Prosen and McFarland, the car was pushed until it started. No notary public was available so it was arranged that the certificate of title would be transferred on the

---

(*) "§ 46-84. HOW TRANSFERRED.—The owner of a motor vehicle * * * registered under the provisions of this chapter transferring or assigning his title or interest thereto shall endorse an assignment and warranty of title upon the reverse side of the certificate of title of the motor vehicle, * * * to the purchaser thereof, with a statement of all liens or encumbrances thereon, shall acknowledge his signature thereto before a person authorized to administer oaths and shall deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle, * * *."

following Monday. Prosen retained the certificate of title without having executed the assignment clause. The accident in question occurred early Monday morning, May 12, at a time when the title to the car was still in Prosen, and the assignment and the delivery of the certificate had not then been made although the purchase price had been paid and the automobile delivered to McFarland. The court held:

"Where an automobile is sold by the owner with full payment of the agreed price and delivery of possession to the purchaser thereof but the assignment and delivery of the certificate of title are deferred, a change in the ownership of the automobile is not consummated in accordance with the provisions of the Ohio Certificate of Title Act and coverage of such automobile by an insurance policy issued to the owner thereof continues in force until the consummation of the sale by assignment and delivery of the certificate of title.

\* \* \*

"The insurance policy [issued to Prosen] which covered the automobile during the period of Prosen's ownership continued in force up to and including the time of the accident."

Also involved in the *Garlick* case was the question of whether or not the automobile was being operated by McFarland with the consent of the legal owner, Prosen.

In the instant case Goodwin was operating the automobile with the express consent of Mrs. Olsen and the court so found. We hold that the insurance policy involved covered the owner of the car or those operating it with the owner's permission and thus covered Goodwin. Code, § 46-492, par. (2).

For the reasons stated the judgment is

*Affirmed.*