**EUREKA–SECURITY FIRE AND MA-RINE INSURANCE COMPANY,**
**Appellant,**

v.

**V. G. MAXWELL, t/a Richmond Trailer Exchange, Appellee.**

No. 7990.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1960.

Decided March 9, 1960.

Angus H. Macaulay, Jr., and Collins Denny, Jr., Richmond, Va. (Claude D. Minor, and Denny, Valentine & Davenport, Richmond, Va., on brief), for appellant.

G. Clinton Moore, Richmond, Va., for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and DALTON, District Judge.

BOREMAN, Circuit Judge.

This action originated in the Law and Equity Court of the City of Richmond, Virginia. After certain of the parties plaintiff and defendant were eliminated, V. G. Maxwell, t/a Richmond Trailer Exchange, remained as sole plaintiff, and Eureka-Security Fire and Marine Insurance Company (hereinafter called "Eureka") remained as sole defendant. The case was then removed to the United States District Court for the Eastern

District of Virginia and was tried before the court without a jury.

Maxwell was engaged in the business of selling new and used trailers and maintained a lot, suitable for his purposes, on the Petersburg Pike in Richmond. Eureka had issued what is known and described as an "Automobile Dealers' Open Lot Policy", No. A 90 352 143, in which Maxwell was named as the insured. This action involves Maxwell's claim of fire loss under this policy.

On February 14, 1955, Maxwell sold to one Hirsh a Schult house trailer under a conditional sale contract whereby Hirsh, buyer, agreed to pay to Maxwell, seller, or his assigns, the balance of the purchase price plus insurance and finance charges, payable in sixty monthly installments of $83.93 each. The total amount due under the contract was $5,035.80. By the terms of the contract, Maxwell retained title to the trailer as security for the unpaid balance and expressly reserved the right to assign the contract and all his rights thereunder. On the same day, Maxwell assigned the contract to The Chase National Bank of the City of New York (which bank subsequently became The Chase Manhattan Bank), hereinafter called "Bank", in the following language:

"For value received, the undersigned does hereby sell, assign and transfer to The Chase National Bank of the City of New York his, its or their right, title and interest in and to the within contract and the trailer covered thereby and authorizes said Bank to do every act and thing it deems necessary or proper to collect and discharge the same."

Subsequently, through proper application and procedure, the trailer was registered with the Division of Motor Vehicles of Virginia, and certificate of title to the trailer was issued to Hirsh as owner, subject to the lien in favor of Bank in the amount of $5,035.80. As provided by the Code of Virginia, Title 46, § 46–74 (1950), the certificate of title was delivered to Bank to be held with the conditional sale contract.

Prior to these transactions, Maxwell and Bank had entered into a written contract dated January 20, 1955, by the terms of which Maxwell was obligated to Bank to repurchase, *upon receipt of a demand* from the Bank, any installment contract in respect of which the obligor was in default in the payment of any installment when due. Further, by the terms of the agreement with Maxwell, Bank had the right to withhold and retain certain amounts due under installment contracts as security for the faithful performance of Maxwell's obligations. These funds so withheld were to be retained in a "hold-back account" and the Bank had the right to apply these funds without notice or demand to (1) any obligation upon which Maxwell defaulted, or (2) any obligation of Maxwell whenever the Bank deemed its investment insecure for any reason. Before making demand on Maxwell, the Bank was obligated by the agreement to endeavor to collect the payments due on conditional sales contracts in a manner normally employed in the usual course of business. While the Bank had no obligation to do so, it had the right to commence any proceeding to collect installments due under any installment contract or to exercise any other available remedy. Upon receipt of payment by the Bank of any installment contract repurchased by Maxwell, such contract was to be immediately assigned, transferred and/or endorsed to Maxwell, without recourse, and sent to him by regular mail.

Early in 1956, Hirsch became delinquent in his monthly payments to the Bank and Bank informed Maxwell of such delinquency. On March 20, 1956, Maxwell, with the consent of Hirsh, repossessed the trailer, placed it on his lot and undertook to ready it for resale as a used trailer. On March 22, 1956, the trailer was extensively damaged by fire.

Pursuant to stipulation of the parties, the District Court found that on the date of the fire the conditional sale contract had not been reassigned to Maxwell and it, together with the certificate of title in

Hirsh, was still in the Bank's possession. The record does not disclose any demand of the Bank upon Maxwell to repurchase the Hirsh contract, and there is no evidence that the amount due under the Hirsh contract was charged by the Bank against Maxwell's "hold-back account".

At the conclusion of all the evidence, Eureka made a motion to dismiss. The motion was denied and the court stated as its reason for so doing that

"Competent evidence may establish true ownership of a motor vehicle, the Virginia registration statutes to the contrary notwithstanding. Plaintiff [Maxwell] agreed with Hirsh, the registered owner of the trailer, to a voluntary repossession because of Hirsh's inability to meet the installment payments. That agreement was fully executed when plaintiff [Maxwell] regained possession of the trailer and with possession title to the trailer vested in plaintiff."

The District Court further found that the insurance policy here involved covered all vehicles consigned to or owned by Maxwell, and since Maxwell owned the trailer at the time of loss, he was entitled to recover from Eureka the amount of $2,672.00 by virtue of the terms of his insurance policy.

Two provisions in Maxwell's Dealers' Open Lot Policy relate to coverage with respect to a vehicle which is subject to a conditional sale contract or other encumbrance. Under "Exclusions" it is provided:

"This policy does not apply:

"(a) * * *

"(b) under any of the coverages, if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy; * * *".

The other exclusion is found in the "Automobile Dealers' Open Policy—Monthly Reporting Form A" attached to and made a part of the policy. This provision reads:

"The Policy covers automobiles consigned to or owned by the Insured and held for sale or used in the Insured's business as an automobile dealer including repair service or as demonstrators but excludes automobiles sold by the Insured under bailment lease, conditional sale, mortgage or other type of encumbrance. * * * *"

By an endorsement attached to the policy, an "Auto Home" or trailer was included in the definition of "automobile".

The insurance policy clearly covered the trailer here involved when it was *owned* by Maxwell *and held for sale* and until the exclusion provisions of the policy became operative by the conditional sale to Hirsh. There is ample authority to support the proposition that "courts have no power to make contracts of insurance, and when it appears upon the face of the contract by clear and unambiguous language that exclusions of risks are incorporated therein, then it is the duty of the court to enforce the contract as written." Welborn v. Wyatt, 1940, 175 Va. 163, 7 S.E.2d 99. See also Hardware Mut. Cas. Co. v. Wendlinger, 4 Cir., 1944, 146 F.2d 984; Darden v. North American Ben. Ass'n, 1938, 170 Va. 479, 197 S.E. 413; Collins v. Metropolitan Life Ins. Co., 1935, 163 Va. 833, 178 S.E. 40.

Maxwell contends that he was the owner of the trailer at the time of the fire loss and within the coverage of the insurance policy; that he became such owner upon repossession of the trailer by operation of law and pursuant to certain provisions of the Virginia statutes which will be hereafter noted.

It appears to be well settled in Virginia that, as a general rule, the sole evidence of ownership of a motor vehicle is the registered title. Nationwide Ins. Co. v. Storm, 1959, 200 Va. 526, 106 S.E. 2d 588; Staunton Industrial Loan Corp. v. Wilson, 4 Cir., 1951, 190 F.2d 706; Byrd v. American Guarantee & Liability

Ins. Co., 4 Cir., 1950, 180 F.2d 246. It may be noted that in Nationwide Ins. Co. v. Storm, supra, the court approved the holding in the case of Garlick v. Mc-Farland, 159 Ohio St. 539, 113 N.E.2d 92, to the effect that ownership of a motor vehicle could not be transferred without transfer and endorsement of the certificate of title even though the purchase price had been paid and the automobile delivered to the buyer.

In its opinion overruling Eureka's motion for summary judgment, the District Court stated that the case of Montgomery v. Whitfield, 188 F.2d 757, decided by this court in 1951, held that competent evidence may establish true ownership of a motor vehicle, the Virginia registration statutes to the contrary notwithstanding. In the Whitfield case, the certificate of title to the truck that was involved in an accident stood in the name of W. W. Whitfield subject to a lien of General Motors Acceptance Corporation. The evidence indicated that some three and one-half months prior to the accident, the truck was sold by W. W. Whitfield to Ben Duke Whitfield, that General Motors Acceptance Corporation assented to the transfer and all subsequent payments on

the truck were collected from Ben Duke Whitfield. On these facts the court did suggest that Ben Duke Whitfield was the owner of the truck even though the certificate of title had not been transferred to him. However, the court sustained a jury verdict for the defendant on the issues of primary and contributory negligence and the observation of the court with respect to a change of ownership was not necessary to the decision.

The District Court does not point to any specific statutory provisions to bring this case within any exception to the general rule. Maxwell appears to rely primarily upon Code of Virginia (1950), Title 46, § 46–86 and § 46–89.[1]

As to the effect of the statutory provisions relied upon by Maxwell had he remained in the position of original conditional vendor we express no opinion but, as we interpret these statutory provisions, Maxwell did not, under the facts here existing, regain ownership of the trailer by operation of law. It must be remembered that, subject to the condition of payment by the vendee, Maxwell retained title to the trailer when he sold to Hirsh, but he immediately thereafter assigned and transferred to Bank all of

---

1. "§ 46–86. When transferred certificate need not be forwarded.—When the transferee of the motor vehicle, trailer or semi-trailer is a dealer who holds the same for resale and operates the same only for sales purposes under a dealer's license plate or when the transferee does not drive the motor vehicle, trailer or semi-trailer nor permit it to be driven upon the highways, the transferee shall not be required to register it nor forward the certificate of title to the Division, as provided in § 46–85, but such transferee upon transferring his title or interest to another person shall give notice of the transfer to the Division and shall endorse and acknowledge an assignment and warranty of title upon the certificate and deliver it to the person to whom the transfer is made."

"§ 46–89. Transfer by operation of law.—Except as otherwise provided in § 46–92 in the event of the transfer by operation of law of the title or interest of an owner in and to a motor vehicle, trailer or semi-trailer registered under the provisions of this chapter, to anyone as

legatee or distributee or by an order in bankruptcy or insolvency, execution sale, repossession upon default in the performing of the terms of a lease or executory sales contract or otherwise than by the voluntary act of the person whose title or interest is so transferred, the transferee or his legal representative shall make application to the Division for a certificate of title therefor, giving the name and address of the person entitled thereto, and accompany such application with the registration card and certificate of title previously issued for the motor vehicle, trailer or semi-trailer, if available, together with such instruments or documents of authority or certified copies thereof, as are required by law to evidence or effect a transfer of title or interest in or to chattels in such case. The Division when satisfied of the genuineness and regularity of the transfer shall cancel the registration of the motor vehicle, trailer or semi-trailer and issue a new certificate of title to the person entitled thereto."

his right, title and interest in the trailer and all rights under the conditional sale contract. Maxwell accepted possession when the trailer was voluntarily surrendered by Hirsh but without any evidence of actual or constructive ownership or right of repossession.

It is a fundamental rule of law that by an absolute assignment of a conditional sale contract, the assignee acquires *all* right, title and interest which the assignor has in the property assigned. 78 C.J.S. Sales § 641(c), p. 462 (1952); 6 C.J.S. Assignments § 82 (1937). See also Evans v. Joyner, 1953, 195 Va. 85, 77 S.E.2d 420. Under the terms of the assignment from Maxwell to Bank, there can be no doubt that an absolute assignment was intended. While there was a separate agreement requiring Maxwell to repurchase the contract from Bank, this agreement in no way limited the assignment since, to make the repurchase agreement operative, Bank was required to demand repurchase by Maxwell. The record discloses no such demand. The only correspondence between Bank and Maxwell, referred to in the court's findings of fact, contained nothing more than a notification of Hirsh's default in payment.

We have not found any Virginia decisions which supply the answers to the questions here presented but there are authorities in other jurisdictions which, in our opinion, correctly follow and apply the recognized principles pertaining to absolute assignments.

In Erwin v. Potts, 1953, 216 Miss. 593, 63 So.2d 50, a replevin action was brought by the original conditional seller of an automobile against the conditional buyer. The conditional sale contract had been assigned to a credit corporation and had not been reassigned at the time the writ of replevin was issued. However, the seller had paid to the credit corporation the balance due and owing under the contract and, thus, all that remained to revest title in the original seller was a reassignment of the contract. It was held that it was immaterial that the full sum had been paid to the credit corporation because, until such reassignment was made, the legal title to the automobile and the right of action to obtain possession of the automobile remained vested in the credit corporation.

Lynn Morris Plan Co. v. Gordon, 1925, 251 Mass. 323, 146 N.E. 685, involved an action of tort for the conversion of an automobile. The automobile was sold under a conditional sale contract, the seller transferring the notes and all his rights under the agreement to the plaintiff, Lynn Morris Plan Co. Subsequently, the buyer returned the automobile to the seller who then sold it to the defendant. The question was whether the plaintiff, upon default in the payments, could maintain this action. The court there held that when the seller transferred the agreement of sale and endorsed the notes to the plaintiff, he had no title or interest whatsoever in the automobile. Therefore, seller's wrongful conduct could not defeat the plaintiff because he had no interest which could be transferred and the defendant could acquire no greater title than his vendor had.

In Manhattan Taxi Service Corp. v. Checker Cab Mfg. Corp., 1930, 253 N.Y. 455, 171 N.E. 705, 706, 69 A.L.R. 1190, the facts were summarized by the court as follows:

"Plaintiff [Manhattan] bought from the defendant The Checker Cab Manufacturing Corporation fourteen taxicabs under contracts of conditional sale, the price to be paid in monthly installments, secured by promissory notes. These promissory notes the conditional vendor sold to the defendant The Hugo Hoffman Credit Corporation, adding its own indorsement. At the same time it assigned the bills of sale, and guaranteed payment in accordance with the contracts. The plaintiff, the buyer, paid more than 50 per cent. of the purchase price of the cabs, and thereafter made default. The credit corporation gave notice of this default to the Checker Corporation, which paid the overdue installments according to its guaranty. There-

upon the Checker Company re-took possession of the cabs for the buyer's breach of the condition."

Checker Corporation then sold the repossessed taxicabs in the name of the Credit Corporation, after publication of notice signed by the Credit Corporation. In dealing with the question of the validity of such sale, Mr. Justice Cardozo (then Chief Judge of the New York Court of Appeals) said:

"When the Checker Company sold and assigned to the credit corporation the bills of sale and notes, the latter corporation became the 'legal successor in interest,' and thereafter was the 'seller' within the meaning of the statute. On this seller devolved the statutory duty to resell at public auction, and in default of such resale to return the statutory proportion of payments theretofore received. The fact is unimportant that in the retaking of the cabs the Checker Company co-operated with the credit corporation, or even acted on its own initiative. No doubt its guaranty of payment supplied it with an interest in regaining the chattels conditionally sold and thus diminishing its loss. The interest did not avail to revest it with its title as conditional vendor, which it had already assigned to another upon the transfer of the notes. Rapp v. Mabbett Motor Car Co., 201 App. Div. 283, 194 N.Y.S. 200; Lynn Morris Plan Co. v. Gordon, 251 Mass. 323, 146 N.E. 685. It was then without greater rights than any 'stranger to the transaction.' "

We reach the conclusion that Maxwell, by repossessing the trailer with the consent of Hirsh, acquired no ownership in it whatsoever nor did such action bring the trailer within the coverage provision of the policy of insurance. Maxwell was not the owner of the trailer at the time of the fire and the trailer, subject to the provisions of the conditional sale contract, was specifically excluded from such coverage. The decision of the District Court must be reversed and the case will be remanded with direction that judgment be entered in favor of Eureka.

Reversed and remanded.