**NATIONWIDE INSURANCE COM-PANY, Plaintiff,**

**v.**

**Joseph HILL, Sr., Joseph Stephen Hill, an infant, Cleveland Kyle Quesenberry, State Farm Mutual Automobile Insurance Company, and Aetna Casualty and Surety Co., Defendants.**

**Civ. A. No. 68-C-95-R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Oct. 16, 1969.

G. Marshall Mundy, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for plaintiff Nationwide.

Kenneth I. Devore, Christiansburg, Va., for Joseph Hill, Sr.

Duane E. Mink, Spiers, Spiers & Mink, Radford, Va., for Joseph Hill, infant.

Jerry H. Geisler, Hillsville, Va., for Cleveland Quesenberry.

Stuart B. Campbell, Jr., Campbell & Campbell, Wytheville, Va., for State Farm.

W. H. Jolly, Kime, Jolly & Clemens, Salem, Va., for Aetna Casualty.

### OPINION AND JUDGMENT

DALTON, Chief Judge.

On July 15, 1967, at approximately 10:30 p. m., Cleveland Kyle Quesenberry

was attending a "Demolition Derby" near Hillsville, in Carroll County, Virginia, at a place known as the Hillsville Speedway. At that time and place, the defendant, Joseph Stephen Hill (hereafter referred to as Hill, Jr.) was a participant in the Demolition Derby. While standing in the spectator area, Quesenberry was injured when Hill, Jr.'s vehicle left the track and struck him. As a result of this accident, Quesenberry filed suit against Hill, Jr. in the Circuit Court of Carroll County seeking damages in the amount of $45,000 for injuries sustained by him. The Derby sponsors did not have any type of liability insurance coverage for the participants. Nationwide Insurance Company (hereafter referred to as Nationwide), the plaintiff herein, insured an automobile owned by Quesenberry, pursuant to the Virginia Uninsured Motorist statute, sec. 38.1–381, Code of Virginia.

That case has been held in abeyance pending the outcome of this declaratory judgment action to determine whether liability insurance policies issued by Aetna Casualty and Surety Company (hereafter referred to as Aetna) and/or State Farm Mutual Automobile Insurance Company (hereafter referred to as State Farm) afford coverage to Hill, Jr., for liability arising out of the accident.

The defendant, Joseph Hill, Sr., (hereafter referred to as Hill, Sr.) is part owner of J & B Auto Parts, in Hillsville. The company's business involves primarily the purchase of old cars for junk and sale of used parts. Hill, Sr. agreed to give the promoters of the Demolition Derby two automobiles, a 1956 Chrysler and a 1959 Oldsmobile, to be driven in the Derby. Hill, Jr., while driving the 1959 Oldsmobile struck and injured Quesenberry. Titles to both automobiles had been previously picked up from Hill, Sr. by the local Division of Motor Vehicles (DMV) Inspector, and the word "junk" written on the titles. Hill, Sr. did not secure a new certificate of title from DMV prior to this transfer of the 1959 Oldsmobile to the Derby promoters

and the automobile was not inspected by DMV prior to its transfer.

Hill, Sr. agreed with the Derby sponsors that he could purchase any cars (including the two furnished by him) remaining after the Derby for the sum of $5.00 per car. The Derby sponsors painted some advertising for J & B Auto Parts on the sides of each car.

The main object in the Derby was to wreck the other drivers, and the last car remaining on the track was the winner. Hill, Sr. and Hill, Jr. both testified that there was no racing and neither time nor speed were factors. There were two or three heats, with three or four cars in each heat, and the "survivor" of each heat went to the feature event. There were money prizes for each heat. The accident involved in this case occurred in the feature heat.

At the time of the accident, Hill, Jr., age twenty, and a VPI student, was out of school for summer vacation and was living with his mother, his parents being divorced. He had a summer job at the Radford Arsenal. He testified that he obtained his mother's permission to drive in the Derby. He was not employed by his father in any way, nor had he ever worked for his father or J & B Auto Parts.

At the time of the accident J & B Auto Parts was insured under a garage liability policy issued by Aetna. Mrs. Jean Hill, mother of defendant Hill, Jr., carried a family automobile policy with State Farm. Nationwide instituted this declaratory judgment and seeks a holding that either Aetna or State Farm is liable on its policy, which holding would eliminate any uninsured motorist recovery against Nationwide.

Aetna contends that this accident is not covered by its policy in that the accident involved a non-owned automobile. Nationwide asserts that the 1959 Oldsmobile was owned by J & B Auto Parts at the time of the accident and, thereby, afforded coverage to Hill, Jr. The question presented is whether, under § 46.1–

98 [1] and § 46.1–87 of the Code of Virginia, Hill, Sr. had done enough to transfer ownership of the 1959 Oldsmobile.

§ 46.1–98 reads as follows:

(a) Every dealer or person, upon purchasing a motor vehicle, trailer or semitrailer which is to be demolished shall immediately surrender the title certificate thereto to the Division and file therewith a copy of the bill of sale or other instrument transferring ownership. Failure to surrender the title certificate shall constitute a misdemeanor punishable under § 46.1–16.

(b) Before such person or purchaser sells or transfers the vehicle or the motor thereof he shall first secure a new title certificate from the Division and it shall be the duty of the Division to make adequate inspection of the vehicle as to mechanical condition, fitness and safety, before issuing the new title certificate.

§ 46.1–87 states that in order to transfer title the owner must endorse an assignment and warranty of title upon the reverse side of the certificate of title, with a statement of all security interests, acknowledge his signature, and deliver the certificate to the purchaser or transferee. In order for J & B Auto Parts to have effectively transferred title under these two sections, J & B would have to secure a new title certificate and have it assigned to the new owner under § 46.1–87.

██ Aetna asserts that the case of Buckeye Union Casualty Company v. Robertson, 206 Va. 863, 147 S.E.2d 94 (1966), should be applied. That case held that evidence may be introduced to prove that the true owner of a vehicle is a person other than the one in whose name the vehicle is registered. The *Buckeye* case and those cases on which *Buckeye* relied all involved situations where the insurance company seeks to disclaim liability because the sole owner of the automobile is not the one designated by the policy. This line of cases holds that for purposes of determining whether the sole ownership statement is untrue and material to the risk (thus voiding the insurance contract), the title certificate is only prima facie evidence of ownership. These cases do not apply to the facts of the present case. The present case involves a situation in which the insurance company seeks to avoid liability because the ownership of the insured vehicle has been transferred. The Virginia cases involving this factual situation uniformly require strict adherence to the statutory procedures to effectuate the transfer of ownership and to cease insurance coverage on a particular automobile.

The court relies on Nationwide Ins. Co. v. Storm, 200 Va. 526, 106 S.E.2d 588 (1959), in determining this issue. In that case one Goodwin purchased a car from Martha Olsen. Goodwin made the final payment on a Saturday. It was agreed that the title certificates would not be transferred until Monday. Goodwin was involved in an accident on Sunday. The question presented to the court was whether Martha Olsen's insurance policy afforded coverage. The court relied on and quoted the following from the case of Garlick v. McFarland, et al., 159 Ohio St. 539, 113 N.E.2d 92 (1953):

Where an automobile is sold by the owner with full payment of the agreed price and delivery of possession to the purchaser thereof but the assignment and delivery of the certificate of title are deferred, a change in the ownership of the automobile is not consummated in accordance with the provisions of the Ohio Certificate of Title Act and coverage of such automobile

---

1. It has been urged on the court that this case is controlled by § 46.1–98.1. § 46.1–98 was replaced and repealed by the enactment of § 46.1–98.1 in 1968. In Virginia a statute is not retrospective in its application in the absence of clear legislative intent to make it so. Because § 46.1–98.1 does not state that it is to have retroactive effect and because the accident occurred while § 46.1–98 was in effect, § 46.1–98 controls this case.

by an insurance policy issued to the owner thereof continues in force until the consummation of the sale by assignment and delivery of the certificate of title. 200 Va. at 529, 106 S.E. 2d at 590.

The court, in finding that Mrs. Olsen's insurance policy afforded coverage, states:

> While we have no case in Virginia on all fours with the instant case, we have held that in order to complete the sale upon his part it is essential that the seller conform to the statutory requirement by delivering to the purchaser a proper assignment of title. Thomas v. Mullins, 153 Va. 383, 391, 149 S.E. 494. 200 Va. at 528, 106 S.E.2d at 589.

The court finds that Hill, Sr. did not follow the proper statutory procedures. Having so failed, the court finds that ownership of the 1959 Oldsmobile remained in J & B Auto Parts and that Aetna has coverage under its garage policy.

Aetna further contends that Hill, Jr. was not an insured under the policy because Hill, Sr. had not granted permission for Hill, Jr. to drive the automobile. The court does not find any merit to this argument. On examination Hill, Sr. testified that as far as he was concerned, Hill, Jr. could drive the 1959 Oldsmobile in the Derby since he had the written permission of his mother.

Aetna finally asserts that exclusion (f) under section III labeled Garagekeepers' Legal Liability applies. This exclusion states that the policy does not apply:

> (f) to an automobile or other property while the automobile is being operated in any prearranged or organized racing or speed contest or in practice or preparation for any such contest.

The evidence is clear that this was not a racing or speed contest. There being no exclusion for Demolition Derbies, the court will not read one into the policy.

State Farm contends that Hill, Jr. was not covered by its policy because of the exclusion under Part I—Liability which reads as follows:

> (h) [the policy does not apply] to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in (1) the automobile business of the insured or of any other person or organization, (2) any other business or occupation of the insured, but this exclusion (h) (2) does not apply to a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant or a trailer used therewith or with an owned automobile.

Exclusion (h) (1) is clearly not applicable to this case. Exclusion (h) (2) does not apply because this exclusion requires the person to be employed or engaged in a business or occupation.

In Virginia there is a well known doctrine that in cases of ambiguity, the courts will lean to the construction most favorable to the insured. Ayres v. Harleysville Mut. Cas. Co., 172 Va. 383, 2 S.E.2d 303 (1939); Combs v. Hunt, 140 Va. 627, 125 S.E. 661, 37 A.L.R. 621 (1924). The construction most favorable to the insured is that this was not a business or occupation. A business or occupation is a term used to describe generally the calling, trade, profession, or principal employment of a person. Driving in the Demolition Derby was not Hill, Jr's. calling, trade, profession, or principal employment.

Further, a review of the cases in other jurisdictions reveals that the term business or occupation has generally been construed to mean more than a single act. In Globe Indemnity Company v. Jett, 367 S.W.2d 396 (Court of Civil Appeals of Texas, 1963), the court was faced with similar facts. Jett, while working as a full time shop foreman, raced automobiles on weekends. The insurance company denied coverage under an exclusion similar to the one in contention here. The court after reviewing previous cases in other courts held that the Trial Court was justified in grant-

ing a Summary Judgment against the insurer on the basis that the insured was not engaged in a business or occupation. Although the precise question has not been determined in Virginia, this court is of the opinion that the term business or occupation connotes something more than a once in a lifetime drive in a demolition derby in which the contestant may or may not win money.

For the foregoing reasons, the court finds that Aetna and State Farm both provided insurance coverage to Hill, Jr. Because Hill, Jr. was not an uninsured motorist, Nationwide has no liability under its uninsured motorist coverage to Quesenberry. Having insured the owned vehicle, Aetna affords primary coverage to Hill, Jr. on the accident. State Farm's insurance coverage for non-owned automobiles is declared by the policy to be "excess insurance". Therefore, State Farm affords secondary coverage for Hill, Jr.'s liability arising from the accident, and it is accordingly adjudged and ordered.