## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County

v.

Saint E. Kerns, Jr.

### August 28, 1990

### Case No. (Law) 82510

## By JUDGE RICHARD J. JAMBORSKY

Plaintiff brought this action pursuant to Va. Code Section 58.1-3953 to collect unpaid personal property taxes assessed in 1983 on three trucks and some (unidentified) "other" property. The plaintiff filed suit on December 22, 1987, and the case was heard without a jury on June 8, 1989.

At trial, the defendant attempted to introduce several documents. The Court admitted defendant's Exhibit No. 1, a list of vehicles owned by the defendant which had been furnished by an employee of Fairfax County. The Court sustained the plaintiff's objection to the admissibility of documents purporting to be a letter from the defendant's insurance company to the police (asserting the insurance company's interest in the vehicle as a result of its settlement for the defendant's loss), a photocopy of checks

paid in settlement of the defendant's loss, and a 1982 letter from the defendant's attorney to Mr. Paul Smith of the Fairfax County Office of Finance. Five witnesses testified for the defendant.

The Court found that one truck had been stolen in 1982 and that the trucks which had not been stolen were regularly garaged in the City of Alexandria on and after January 1, 1983.

## Questions Presented

*I. May a taxpayer challenge situs in a collection action brought by a county pursuant to Section 58.1-3953 when the running of the statute of limitations would bar the taxpayer's application to correct an erroneous assessment pursuant to Section 58.1-3984?*

*II. Is a vehicle which was stolen in 1982 subject to taxation in Fairfax in 1983?*

*III. Can Fairfax County tax vehicles in 1983 which were normally parked or garaged in the City of Alexandria during 1983?*

## Discussion

*I. A taxpayer may challenge situs when the county brings an action pursuant to Section 58.1-3953 even if the running of the statute of limitations would bar an application to correct an erroneous assessment pursuant to Section 58.1-3984.*

The plaintiff argues that the taxpayer can only challenge an erroneous assessment in court pursuant to Section 58.1-3984 or pursuant to § 58.1-3511 (when the taxpayer has paid a double assessment). The plaintiff extensively discusses the law of recoupment and set-off in relation to the statute of limitations. The plaintiff attempts to show that defendant's challenge was neither. The plaintiff also contends that the defendant cannot challenge or defend against the plaintiff's action to collect taxes because the defendant would be barred from applying to the court pursuant to § 58.1-3984 to correct

an erroneous assessment three years after the last day of the year for which the assessment was made. In effect, the plaintiff would have the court construe the statutes together as creating an irrebuttable presumption that a tax is correct when a taxpayer fails to petition to challenge the assessment in a timely manner. The plaintiff cited one authority in support of reading the limitation on actions of § 58.1-3984 into § 58.1-3955. The plaintiff contends that *Hurt v. Bristol*, 104 Va. 213 (1905), stands for the proposition that the statute of limitations will apply in a government collection action unless a taxpayer had no prior knowledge of the assessment.

This case, however, does not require the court to apply the statute of limitations from § 58.1-3984 into Section 58.1-3955. In *Hurt*, the Virginia Supreme Court held that the statute of limitations from an earlier version of § 58.1-3984 did not bar a taxpayer from showing the lack of situs in an action to collect taxes by garnishment: "We do not think that this section has any application whatever to the case." *Id.* In the next sentence, the court mentioned that the taxpayer had not known of the erroneous assessment until served with the government's garnishment notice. *Id.* When only the two sentences are considered, the taxpayer's lack of knowledge might appear to be significant, but when the case is viewed in light of other principles of law, lack of knowledge seems totally irrelevant. First, ignorance of an actionable wrong neither excuses nor suspends the running of a statute of limitations. If this is the general rule, the *Hurt* court could not have correctly based its decision on the taxpayer's ignorance. Moreover, statutes of limitations may bar a cause of action, or even a right of action, but they are not issue preclusive: facts are not deemed to be established merely because a remedy for the wrong is extinguished. The taxpayer's lack of knowledge should not have been legally significant. The case then suggests that the provisions should not be read together.

Furthermore, another Virginia case suggests, by analogy, that the courts should be hesitant to read limitations of different sections of the Virginia tax code into the provision setting out the government's right to collect taxes. In *Banks v. County of Norfolk*, 191 Va. 463, 467 (1950), the government argued that the Court must read

the taxpayer's ability to show that taxes were improperly charged in light of former Code § 58-815 (validating errors by assessing officers unless contestants show that the errors operated to the prejudice of the contestant's rights). The court refused to do so, stating that § 58-815 was concerned with liens on property. The court ruled that the concerns of that section were entirely different from those of a collection action: in a collection action, the court is only concerned with whether the government fulfilled the statutory requirements to proceed personally against the owner of property subject to taxation. *See id*. at 467, 469. At the least, this case means that a court need not read into § 58.1-3955 all sections of the tax code which might limit a taxpayer's ability to show that the government had no power to tax property. There seems to be no reason for reading § 58.1-3984 into the case at bar.

The defendant contends that the statute of limitations from § 58.1-3984 has no application to an action under Section 58.1-3955. He reasons that showing that the county has no jurisdiction to tax him is not a challenge of an assessment. The defendant contends that he has merely rebutted the presumption that the assessment was correct, so the plaintiff must now show the correctness of the assessment by a preponderance of the evidence. He cites a case in which dicta may (by implication) support this idea: *Hogan v. County of Norfolk*, 198 Va. 733 (1957). In *Hogan*, the court discussed the presumption favoring the assessment as follows:

> If the *situs* of the subject of the tax is within the jurisdiction of the assessing officer, he has jurisdiction to make the assessment, and the assessment is presumed to be legal and valid in all respects, until the contrary is affirmatively shown [emphasis in original].

*Id*. at 736 (citation omitted). *Compare Arlington County v. Stull*, 217 Va. 238, fn. at 241 (1976) ("an assessment, including the County's determination of situs, is entitled to the presumption of correctness"). Because both these statements were made in the context of a taxpayer petition challenging an assessment, they might not apply in a govern-

ment action. Nevertheless, the *Hurt v. Bristol* case implies that situs is jurisdictional, and *Hurt* was decided in the context of a government collection action.

The plaintiff had an array of permissible actions for collecting taxes but chose to collect through a personal action against the defendant pursuant to § 58.1-3953. When a plaintiff chooses this procedure, a court is empowered to determine whether tax was correctly charged:

> Section 58.1-3955. *Judgment or decree; effect thereof; enforcement.* -- In any proceeding under Section 58.1-3953, the court shall have the power to determine the proper taxes, penalties, and interest with which upon a correct assessment the taxpayer is chargeable for any year or years not barred by the statute of limitations at the time the proceedings were instituted and order payment thereof. If any taxes of which collection is sought have been erroneously charged, the court may order exoneration thereof.

Nothing in this provision affirmatively bars the taxpayer from introducing evidence that the tax was erroneously charged. Read literally, this language appears to open the door to a taxpayer's argument that statutory pre-requisites have not been fulfilled. Failure to fulfill the statutory requirements is fatal to a government's cause of action under § 58.1-3955. *See, e.g., Banks v. County of Norfolk, supra,* 191 Va. at 469 (the government's failure to assess the property in the name of the life tenant during her lifetime barred a personal action against her estate for the taxes). Lack of situs would also be a defect fatal to a cause of action under § 58.1-3955. *See Hurt,* above (reversing judgment for the government solely because of lack of situs).

*II. The vehicle which was stolen in 1982 was subject to taxation in Fairfax in 1983.*

The situs of the stolen truck was in Fairfax County in 1983. The language of the statutory provision governing situs is plain and unambiguous: "In the event it cannot be determined where . . . [a motor vehicle] is normally

garaged, stored, or parked, the situs shall be the domicile of the owner . . . ." § 58.1-3511. Because the truck's whereabouts were unknown, it cannot be determined where it was normally garaged in 1983. The literal language of the statute prescribes that the situs of the truck in 1983 was Fairfax County, the defendant's domicile.

The defendant contends that because he lost possession of the vehicle when it was stolen, the County cannot tax him as the owner. No authority supports this position, and it is contrary to the plain language of the tax statutes, which only require ownership and situs. The plaintiff argues that absent evidence of adverse possession or conversion, theft has no effect on the ownership of property, so the defendant owned the property. The plaintiff's conclusion is correct.

When ownership of a stolen vehicle passes for purposes of taxation is not specified by statute or case law. Under Section 8.2-401 of Virginia's UCC, a thief cannot pass good title of stolen goods to a purchaser. *Cf. Castle Cars v. U. S. Fire Insurance Co.*, 221 Va. 773 (1981) (an innocent purchaser of a stolen vehicle may acquire an insurable interest in the vehicle although he does not receive legal title). When title to a motor vehicle has not been transferred or assigned, the titleholder generally retains ownership. For example, in *Nationwide Insurance Co. v. Storm*, 200 Va. 526, 529, 106 S.E.2d 588 (1959), the Supreme Court held that a seller retains ownership of an automobile until title is transferred according to motor vehicle laws, so the seller's automobile insurance policy covered the automobile at the time of an accident. Conversely, title (and ownership) would pass if the owner of an insured stolen vehicle were to assign or convey title to his insurance company; subrogation clauses within many insurance policies require insureds to do so when the company has compensated an owner for loss by theft.

A titleholder would also retain beneficial interest in a stolen vehicle before he accepted compensation for loss under an auto theft policy. The insured might retain this interest after payment as well: he may be entitled or even obligated to take back a stolen vehicle if it is recovered. Some cases hold that an insurance company can force an insured to accept the return of a vehicle within a time specified in the provisions of the policy.

*See generally* Anno., "Auto Theft Insurance: Rights and Duties of Parties as Regards the Finding, Recovery, and (or) Return of Car," 75 A.L.R. 1420 (and cases cited therein). Cases from other jurisdictions hold that an insured may recover for total loss, unaffected by any subsequent recovery, if there is no contrary provision in the policy. *Id*. Nevertheless, an owner of a vehicle insured for loss by theft may still retain some beneficial interest in the vehicle in addition to retaining title.

Under federal estate and gift tax law, the burden of showing lack of ownership of stolen property would be borne by the estate of the deceased. The gross estate of a decedent for purposes of federal estate tax includes all the property interests which the decedent held at the time he died. When a decedent holds legal title to property at the time of death, the burden is on the estate to prove that the decedent had no beneficial interest. Warren, Gorham & Lamont, Federal Estate and Gift Tax 4.052 (4th ed. 1978) (citing *Estate of Rose*, 32 T.C. 4611 (1973)). Although the question of ownership is determined by considering state law, the decedent must generally have had a real interest in the property. Void transfers (*e.g.*, fraudulent conveyances) are includable in the gross estate, but one who holds naked title as a trustee does not have sufficient interest in property to render it includable. *Id*. (citing *Reed v. Commissioner*, 36 F.2d 867 (5th Cir. 1930)).

A separate provision of the estate and gift tax code (§ 2054) allows deductions from the gross estate for losses due to theft or destruction during the administration of an estate. Because § 2054 does not contemplate deductions for property that was never includable in the gross estate, commentators have implied that losses due to theft or destruction before the decedent's death never become part of the gross estate. *See e.g.*, WG&L at 5.04[3]. In all likelihood, however, the estate would still bear the burden of showing that the decedent had lost all beneficial interest in the property if he died holding legal title to it.

Ownership of a stolen vehicle for purposes of taxation might pass even absent adverse possession or conversion if title or beneficial interest were transferred or assigned. When there is no showing that title or beneficial

interest have passed, however, ownership appears to remain. Although it is not clear whether the government's determination that someone owns property enjoys any presumption of correctness, it is reasonable to require a defendant to show that he no longer held title or interest in a vehicle that was once titled in his name.

Even if the government must show that the tax was properly charged without the aid of a presumption that the defendant actually owned the property, ownership has been shown in the case at bar. The defendant admits that he held title to the stolen truck at one time; for example, in his answer, he stated, "The motor vehicles in question, while owned by the defendant, were never garaged in Fairfax County or otherwise kept in Fairfax County in such a way as would give rise to tax liability." Answer, p. 1, para. 5. He introduced no documentation showing that he is no longer registered as titleholder. He introduced none showing that he ever assigned or transferred title of the truck to the insurance company. He introduced none showing that the defendant's insurance company could not have forced him to take back the truck if it had been recovered in 1983. Because the defendant introduced no such evidence, the only evidence before the Court shows that the defendant still owns the truck.

Because the defendant owned the stolen truck and was domiciled in Fairfax County in 1983, the government had power to tax the vehicle. As a result, the tax was correctly charged.

*III. The other vehicles were not subject to tax in Fairfax County during 1983 because they were normally garaged in the City of Alexandria on and after January 1, 1983.*

When it can be determined where a motor vehicle is normally parked or garaged, the situs of the motor vehicle is the town, county, district, or city where the vehicle is parked or garaged. Having found that the testimony of the witnesses proved that the defendant's other trucks were normally garaged in the City of Alexandria on and after January 1, 1983, the situs of these vehicles for taxation was in the City of Alexandria. As a result, Fairfax County had no power to tax them. *Cf. Arlington County v. Stull*, 217 Va. 238, 241 (1976) (affirming trial

court ruling that taxpayer met burden of challenging an assessment by showing that situs was not in the taxing county). If the County had no power to tax these properties, the taxes, penalties, and interest attributable to the vehicles garaged in Alexandria were erroneously charged under § 58.1-3955.

In summary, the statute of limitations on a taxpayer's petition to challenge an assessment would not bar a defendant from showing that the tax was erroneously charged. Tax would be erroneously charged if the situs of the property is not in the jurisdiction seeking to collect the tax. Because the situs of the stolen truck was in Fairfax County, the tax on that vehicle was properly charged. Because the situs of the other trucks was in the City of Alexandria, the tax on these vehicles was erroneously charged.