**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SCOTT FIELD, Chapter 7 Trustee for
bankrupt estate of Russell Egder
Dangerfield,
Plaintiff-Appellant,

and

MALEK MANESH; MOHAMMED
EMDADI,
Plaintiffs,

v.

TRANSCONTINENTAL INSURANCE
COMPANY,
Defendant-Appellee,

and

CNA INSURANCE COMPANIES,
Defendant.

SCOTT FIELD, Chapter 7 Trustee for
bankrupt estate of Russell Egder
Dangerfield,
Plaintiff-Appellee,

and

MALEK MANESH; MOHAMMED
EMDADI,
Plaintiffs,

v.

No. 98-1851

No. 98-1857

TRANSCONTINENTAL INSURANCE
COMPANY,
<u>Defendant-Appellant,</u>

and

CNA INSURANCE COMPANIES,
<u>Defendant.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-97-702-A)

Argued: January 25, 1999

Decided: February 16, 1999

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John R. Garza, GARZA, REGAN & ROSE, P.C., Rock-
ville, Maryland, for Appellant. Stephen Anthony Horvath,
TRICHILO, BANCROFT, MCGAVIN, HORVATH & JUDKINS,
P.C., Fairfax, Virginia, for Appellee. **ON BRIEF:** Lynn Perry Parker,
GARZA, REGAN & ROSE, P.C., Rockville, Maryland, for Appel-
lant. Michael J. Carita, TRICHILO, BANCROFT, MCGAVIN, HOR-
VATH & JUDKINS, P.C., Fairfax, Virginia, for Appellee.

_____

2

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Scott Field, trustee in bankruptcy for Russell Dangerfield, brought this diversity action against Transcontinental Insurance Co. alleging bad faith failure to defend, denial of coverage, and failure to settle an action against Dangerfield. The trustee sought $1.2 million in damages, an amount well over the policy limit. The district court held that, under Virginia law, the insurance policy at issue did cover Dangerfield; and so the court awarded the trustee $25,000, the total amount available under the policy. The court, however, went on to find that Transcontinental had not acted in bad faith when it denied coverage and refused to defend Dangerfield. Accordingly, the court denied the trustee any greater relief and granted summary judgment to Transcontinental on the bad faith claims. See Field v. Transcontinental Ins. Co., 219 B.R. 115 (E.D. Va. 1998). We affirm.

I.

In October 1995, Russell Dangerfield purchased a Ford Bronco automobile from HBL Mercedes in Vienna, Virginia pursuant to a conditional sales contract. The agreement allowed Dangerfield to possess the vehicle while HBL sought financing to complete the transaction. HBL supplied Dangerfield with temporary title to the Bronco but the actual certificate of title remained with HBL. At all relevant times, Transcontinental insured HBL under a standard "garage policy" covering HBL for liability arising out of the ownership of vehicles in its dealership. Pursuant to Virginia law, the policy also covered drivers using the vehicles with HBL's permission, including customers who had no insurance of their own. See Va. Code§ 38.2-2205 (1998). Despite his representations to the contrary, Dangerfield did not have his own insurance at the time of the accident that led to this proceeding.

3

On October 31, 1995, while driving the Bronco northbound in the southbound lane of a divided highway, Dangerfield caused a multi-car collision, severely injuring Malek Manesh. Subsequently, Manesh sued Dangerfield in Maryland state court for personal injuries sustained in the accident. After the accident but before service of Manesh's complaint, Dangerfield filed Chapter 7 bankruptcy. The bankruptcy court lifted the automatic stay in order for Manesh to pursue her claim, which resulted in a judgment against Dangerfield in the amount of $1.2 million. Because Transcontinental determined that its policy covering HBL did not apply to Dangerfield, it took no part in Manesh's suit against Dangerfield. Manesh has since recovered a portion of her costs from her own insurance company but the $1.2 million judgment has yet to be satisfied.

II.

The district court found that Field, as trustee of Dangerfield's bankruptcy estate, was entitled to bring a bad faith failure to insure claim against Transcontinental because the action was "sufficiently rooted in the pre-bankruptcy past." Segal v. Rochelle, 382 U.S. 375, 380 (1966); see also Ryerson v. Ryerson, 739 F.2d 1423, 1426 (9th Cir. 1984). Moreover, the court noted that, because the insurance policy at issue existed pre-petition, Dangerfield's rights under the policy became property of the estate when he filed bankruptcy and the trustee properly initiated this action on behalf of the debtor's estate. See 11 U.S.C.A. § 541(a)(1)(1993); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1001 (4th Cir. 1986).

Next, the district court concluded that HBL owned the vehicle involved in the crash despite Dangerfield's possession of it. The court reasoned that, because Virginia is a strict title state, see Rawl's Auto Auction Sales, Inc. v. Dick Herriman Ford, Inc., 690 F.2d 422, 427 (4th Cir. 1982), and title remained with HBL throughout the relevant time period, HBL continued to own the Bronco. Because HBL retained ownership of the vehicle and Dangerfield did not have any independent insurance, the court concluded that Transcontinental's policy covered Dangerfield on the day of the accident. Thus the court assessed $25,000 in damages against Transcontinental, the amount it would have owed under the policy had it provided the proper coverage to Dangerfield.

The district court rejected Transcontinental's contention that Dangerfield owned the Bronco because the broad definition of "owner" found in the Motor Vehicles title of the Virginia Code applied in this insurance context. See Va. Code § 46.2-100 (1998) (defining owner to include a conditional vendee with an immediate right to possession). The court explained that the Motor Vehicle title's broad definition of owner was expressly limited to use "for the purpose of [that] title." Id. Furthermore, the court noted the extensive case law interpreting the term owner in the context of conditional sales contracts and insurance coverage to mean, more narrowly, holder of title. See e.g., Hardware Mut. Cas. Co. v. Jones, 330 F.2d 1014, 1016 (4th Cir. 1964); United States Fidelity & Guar. Corp. v. Myers Motors, Inc., 143 F. Supp. 96, 97-98 (W.D. Va. 1956); Nationwide Ins. Co. v. Storm, 106 S.E.2d 588, 589 (Va. 1959). Thus the district court held that the narrow context-specific interpretation of the term owner applied in this case rather than the broad, general definition found in another title of the Virginia Code.

Finally, the district court concluded that Transcontinental exhibited no bad faith in these circumstances. Applying the factors set forth in CUNA Mut. Ins. Soc'y v. Norman, 375 S.E.2d 724, 727 (Va. 1989), the court explained that the company had performed an adequate investigation of the matter, that reasonable evidence supported the company's conclusions, that its denial of coverage was not a strategic ploy, that the decision involved debatable questions of law and fact and, ultimately, that Transcontinental was reasonable (although incorrect) in determining that Dangerfield was not covered by the policy. Finding no bad faith on the part of Transcontinental, the district court did not reach the question of what damages, if any, Dangerfield suffered as a result of the company's failure to defend or settle Manesh's claim against him. Instead, it granted summary judgment to Transcontinental on the bad faith claims.

III.

We have carefully reviewed the record, briefs, arguments, and applicable law. We find the district court's opinion well-reasoned and persuasive. See Field v. Transcontinental Ins. Co., 219 B.R. 115 (E.D. Va. 1998). In so concluding, we note that, contrary to Transcontinental's suggestion, Hall, Inc. v. Empire Fire & Marine Ins. Co., 448

5

S.E.2d 633 (Va. 1994), does not require a different result. In that case, the Virginia Supreme Court cited Va. Code § 46.2-100's definition of owner in an insurance coverage case. Id. at 635. Hall, however, did not involve a conditional sales contract or an ownership dispute and the court cited only the portion of the definition narrowly defining owner as title holder. Id. at 634-35 (noting that the word "owned" in the insurance policy was clear and unambiguous because the "owner of an automobile is the party who has legal title to it").

We affirm on the basis of the district court opinion.

AFFIRMED

6